[Cite as *State v. Balo*, 2011-Ohio-3341.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,                                        CASE NO. 1-10-48

   PLAINTIFF-APPELLEE,

  v.

CRYSTAL BALO,                                        O P I N I O N

   DEFENDANT-APPELLANT.

Appeal from Allen County Common Pleas Court
Trial Court No. CR2009 0296

Judgment Affirmed

Date of Decision:  July 5, 2011

APPEARANCES:

   *F. Stephen Chamberlain* for Appellant

   *Jana Emerick* for Appellee

**ROGERS, P.J.**

{¶1} Defendant-Appellant, Crystal Balo, appeals from the judgment of the Court of Common Pleas of Allen County sentencing her to a three-year term of community control, and ordering her to pay $2,974.32 in restitution to Anthem Blue Cross/Blue Shield ("Anthem"). On appeal, Crystal contends that she was incorrectly indicted, that the trial court erred in failing to grant her motion to dismiss the indictment, and that her conviction was against the manifest weight of the evidence. Based on the following, we affirm the judgment of the trial court.

{¶2} In September 2009, the Allen County Grand Jury indicted Crystal on one count of insurance fraud in violation of R.C. 2913.47(B)(1),(C), a felony of the fourth degree. In response, Crystal entered a written plea of not guilty to count one of the indictment ("original indictment"), and subsequently filed a request for a bill of particulars.

{¶3} In October 2009, the Allen County Grand Jury returned an amended indictment charging Crystal on one count of grand theft by deception in violation of R.C. 2913.02(A)(3),(B)(2), a felony of the fourth degree. The indictment ("amended indictment") stated in pertinent part:

> **Crystal D. Balo, whose real and true name is to the Grand Jury unknown**
>
> **did, with purpose to deprive the owner of property or services, knowingly obtain or exert control over either the property or**

> **services by deception; said theft having been committed through a series of theft offenses in the offender's same employment, capacity, or relationship to another and the aggregate value of all property and services involved in all offenses in the series being five thousand ($5,000.00) dollars or more;**
>
> **in violation of the Ohio Revised Code Section 2913.02(A)(3),(B)(2), a felony of the 4th degree, and against the peace and dignity of the State of Ohio.**

Subsequently, the State entered a nolle prosequi on the original count of insurance fraud.

{¶4} In February 2010, the State filed the bill of particulars. The bill of particulars stated in pertinent part:

> **As to the sole count of the Amended Indictment: beginning on approximately January 1, 2004, when the defendant's brother, Richard Roby, became ineligible for coverage through the defendant's health insurance, and continuing until the time defendant's employment with Allen County was terminated in approximately September 2009, the defendant knowingly aided and abetted Richard Roby and/or Steven Balo in obtaining property or services, to-wit: health insurance (including prescription and vision coverage) benefits, and did so by deception, through failing to provide defendant's employer and/or Anthem insurance company with the information that Richard Roby and/or Steven Balo were no longer eligible for health insurance coverage, and did so with purpose to deprive the insurance company of the value of said coverage deceptively obtained or retained and the value of benefits actually paid, which in the aggregate total over $5,000.00.**

{¶5} In March 2010, Crystal filed a motion to dismiss the amended indictment on grounds that the indictment, as well as the accompanying bill of particulars, was vague. Specifically, Crystal argued that the State should have set

forth each instance of theft, rather than simply referring to the instances as "a series of theft offenses," pursuant to R.C. 2913.61(C)(1).

{¶6} The State responded to Crystal's motion to dismiss, arguing that the amended indictment, as well as the bill of particulars, was sufficient to inform Crystal of the precise nature of the offense. The State also argued that Crystal was sufficiently informed of each instance of theft via discovery filed by the State.

{¶7} On March 31, 2010, the trial court filed an order overruling Crystal's motion to dismiss. Despite this order, the trial court held a hearing on Crystal's motion to dismiss on April 1, 2010. Based upon additional evidence and arguments proffered by Crystal during the hearing, the trial court vacated its original order denying Crystal's motion to dismiss the indictment. In so doing the trial court requested supplemental briefs from Crystal and the State.

{¶8} In her supplemental brief, Crystal argued that the indictment and bill of particulars were insufficient to put her on notice of the pending charge. First, Crystal argued that the State should have set forth each instance of theft, rather than simply referring to the instances as "a series of theft offenses." Second, Crystal argued that the language within the amended indictment conflicted with the language within the bill of particulars. Specifically, Crystal argued that the amended indictment contained verbiage indicating that there was only one victim, whereas the bill of particulars contained verbiage indicating that there were multiple victims.

{¶9} In response, the State argued that the amended indictment tracked the language of the statute Crystal allegedly violated. The State also argued that the verbiage contained within the bill of particulars did not indicate that there were multiple victims, but rather described the means by which Crystal's ex-husband, Steven Balo, and brother, Richard Roby, committed the target offense.

{¶10} The trial court, again, overruled Crystal's motion to dismiss the indictment, stating in pertinent part:

> **The "Amended" Indictment clearly states that the Defendant is charged with a series of theft offenses and that there is a single victim.**
>
> **The Bill of Particulars puts Defendant on notice that the basis of the charge is that she deceptively failed to notify her employer or health insurance company that Richard Roby and/or Steven Balo were no longer eligible for insurance coverage and, in doing so, she aided and abetted Richard Roby and/or Steven Balo in stealing health insurance coverage and benefits.**
>
> **The Court finds that the Bill of Particulars does not reflect the fact that there are multiple victims, which, if true, would be in conflict with the charging indictment.**
>
> **The Court further finds that the Defendant has been provided proper notice of the charges against her and the Bill of Particulars (not in conflict with the "Amended" Indictment) is sufficient to put her on notice as to the conduct constituting the crime.**
>
> Order Overruling Motion to Dismiss Amended Indictment, p. 4.

{¶11} In May 2010, the matter proceeded to a bench trial, during which the following facts and testimony were adduced.

{¶12} Sometime prior to January 1, 2004, Allen County contracted with ACMG, Inc. ("ACMG") to provide health insurance to its employees. On January 1, 2004, Allen County discontinued its relationship with ACMG and became an active member of the County Employee Benefits Consortium of Ohio ("CEBCO"). CEBCO, acting as a representative for multiple member counties, contracts with Anthem to provide health insurance to the employees of member counties.

{¶13} As a member of CEBCO, every Allen County employee is required to complete a new insurance enrollment form detailing, inter alia, the employee's name, address, social security number, the employee's dependents, the dependents' birthdates, and whether they want to be part of the single, two-party, or family plan. Under the insurance plan an employee's spouse, biological children, step-children, adopted children, and those who are in the legal custody of the employee qualify as dependents, and are eligible to receive benefits under the insurance plan. Once the enrollment form is completed the data is entered into Benefit Solver, a computer program provided by CEBCO. Benefit Solver contains the employee's name, birthdate, social security number, as well as the names of the employee's dependents and their birthdates.

{¶14} Under the insurance plan, the employee is responsible for notifying the employer of any changes that would affect him/her or his/her dependents' eligibility. A dependent child's eligibility terminates either at the end of the

calendar year in which they turn nineteen-years (19) old, or at the end of the calendar year in which the child turns twenty-five (25) years old if the child qualifies as a federal tax exemption. A dependent spouse's eligibility terminates upon death or divorce. If the employee's spouse becomes ineligible as a result of a divorce, then the employee must submit a copy of the divorce decree to its employer.

{¶15} When a change occurs that affects the benefits of an employee or his/her dependents, Allen County requires the employee to submit a Change Form. These forms are provided by CEBCO and are located in every Allen County department. The Change Form is primarily used to designate new dependents or dependents who are no longer eligible to receive benefits. Once the Change Form has been completed the employee submits it to his/her departmental supervisor. The Change Form is then forwarded to Allen County's Benefits Coordinator, who works in the Allen County Commissioner's Office ("Commissioner's Office"). The benefits coordinator enters the Change Form's information into Benefit Solver. The information is then uploaded to CEBCO and Anthem. After entering the information into Benefit Solver the benefits coordinator places the original Change Form in the department's insurance file, which is kept in the benefit coordinator's custody.

{¶16} In 2002, Crystal began full-time employment with Allen County as its Benefits Coordinator. In her capacity as Benefits Coordinator Crystal was

responsible for administering Allen County's insurance plan, which included enrolling employees in the insurance plan, receiving Change Forms, entering changes in Benefit Solver, and submitting the changes to the insurance company. In November 2003, in anticipation of the health insurance changeover from ACMG to CEBCO, Crystal submitted an enrollment form to secure health insurance for herself and her dependents. Crystal listed Steven, her husband at the time, Roby, her brother of whom she had custody at the time, and her daughter as dependents. Because Crystal was the subscriber she received explanation of benefit forms ("EOB's") from Anthem, detailing the care she or her dependents received. All EOB's were mailed, via ordinary mail, to Crystal's residence.

{¶17} In early 2006, Crystal took a position in the Allen County Auditor's Office ("Auditor's Office"). In her stead, Nicole Ward became the new Benefits Coordinator for Allen County. In March 2009, Ward began an audit of Allen County's health insurance plan. The initial focus of the audit was to determine the eligibility of dependents, specifically those between the ages of nineteen and twenty-five years old, listed on an employee's insurance plan. Ward sent an e-mail to the head of each department in Allen County requesting that their employees complete a Dependent Verification Form ("Verification Form"). In the meantime, Ward enlisted the help of her supervisor, Rebecca Saine, the Allen County Administrator. Saine accessed Benefit Solver and generated a list of employees whose dependents were over the age of nineteen. As the Verification

Forms were returned, Ward and Saine cross-referenced the Verification Forms with Saine's list. Despite having not received a Verification Form from Crystal, Saine noticed that Crystal listed Steven as a dependent spouse. This discovery caused further investigation into Crystal's insurance file, because Saine knew that Crystal and Steven divorced in 2006. In addition to Steven, Crystal maintained Roby as a dependent under her insurance plan, despite the fact that Roby, at that point in time, was twenty-four years old.[1] Upon review of Crystal's insurance file the only documents contained therein were Crystal's ACMG enrollment form from 2002, which listed Steven and Roby as dependents; Crystal's CEBCO enrollment form, dated November 2003, which listed Steven and Roby as dependents; and a Change Form, dated November 2004, adding Crystal's newborn daughter to her insurance plan. Crystal's insurance file did not contain any Change Forms pertaining to Steven or Roby, nor did it contain a divorce decree.

{¶18} In April 2009, Ward personally delivered a letter to Crystal requesting her to complete a Verification Form. On that same day Crystal left Ward a voicemail. Saine transcribed the voicemail, and the same was read into the record. The transcription read in pertinent part:

> **Hey, Nicole, this is Crystal in the Auditor's Office. Hey, I got your letter today about the dependent verification on my brother that I had custody of. He was canceled off of the plan, well, should have been cancelled off the plan like three (3) or four (4)**

---

[1] There was no evidence that Roby qualified as an IRS dependent, thus he should have been removed from Crystal's insurance at the end of the calendar year in which he turned nineteen-years old, a fact Crystal seemingly concedes in her voicemail to Ward.

**years ago. There shouldn't be any activity for him because he hasn't been on the plan for, like I said, it's been – well, he's 24. So, I cancelled him when he was 19 because I had custody of him up until – well, I had custody of him till he was 18. So I don't know if you want me to fill this form out or what you want me to do, but he should not be on the plan. Um, and like I said, there shouldn't be anything submitted for him. * * ***

{¶19} After listening to the voicemail Saine contacted Juergen Waldick, the Allen County Prosecutor, about her findings. Prosecutor Waldick instructed her to inform Rhonda Eddy, the Allen County Auditor, of her findings and then meet with him to discuss the matter.

{¶20} Lieutenant Clyde Breitigan, a detective with the Allen County Sheriff's Department, began an investigation of the matter in May 2009. During Lieutenant Breitigan's investigation he spoke with Crystal several times. During one of their conversations Crystal stated that she had a copy of a Change Form removing Steven and Roby from her insurance plan. Crystal called the Auditor's Office, and asked Anthony Stechschulte, Director of Accounting in the Auditor's Office, to look for the Change Form in her payroll file. Stechschulte found the Change Form in Crystal's payroll file. Later that same day Lieutenant Breitigan went to the Auditor's Office to obtain a copy of the Change Form.

{¶21} Stechschulte testified that the Change Form he found in Crystal's payroll file had six roller marks near the bottom of the page. Stechschulte further testified that the roller marks were likely caused by the copier in the Auditor's Office, which had been purchased in 2008. The copier started to make the marks

in the spring of 2009, a phenomenon that the Auditor's Office previous copier did not share. Stechschulte continued that he placed a blank piece of paper through the copier to determine whether the roller marks would appear. The six roller marks did appear and the marks matched those on the Change Form Stechschulte found in Crystal's payroll file.

**{¶22}** Carrie Lucas, a claims manager at Anthem, testified that Anthem paid out $5,727.52 in claims for Steven, and $2,974.32 in claims for Roby, after they became ineligible to receive benefits under Crystal's insurance plan.

**{¶23}** Subsequently, the trial court found Crystal guilty of grand theft by deception.

**{¶24}** In June 2010, the matter proceeded to sentencing. The trial court sentenced Crystal to a three-year term of community control. The trial court further ordered Crystal to pay $2,974.32 in restitution to Anthem.

**{¶25}** It is from this judgment Crystal appeals, presenting the following assignments of error for our review.

*Assignment of Error No. I*

**THE DEFENDANT WAS INCORRECTLY INDICTED IN THIS CASE THEREBY MAKING THE CONVICTION VOID.**

*Assignment of Error No. II*

**THE TRIAL COURT ERRED BY FAILING TO GRANT THE DEFENDANT'S MOTION TO DISMISS.**

### *Assignment of Error No. III*

**THE DEFENDANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL.**

### *Assignment of Error No. I*

**{¶26}** In her first assignment of error, Crystal contends that she was improperly indicted. Specifically, Crystal contends that she should have been indicted for insurance fraud, rather than theft by deception, because the more specific statutory provision, insurance fraud, must take precedence over the more general statutory provision, theft by deception. We disagree.

**{¶27}** Crystal contends that she was improperly indicted for theft by deception, pursuant to R.C. 2913.02(A)(3). Citing *State v. Volpe* (1988), 38 Ohio St.3d 191, Crystal contends that the State's original indictment alleging insurance fraud was proper, as the facts of the case revolved around allegedly fraudulent insurance claims. Consequently, Crystal contends that her conviction under R.C. 2913.02(A)(3) is void.

**{¶28}** In *Volpe*, defendants were caught with betting machines and convicted of possessing criminal tools. The defendants, citing R.C. 1.51, argued that they should have been charged under the more specific prohibition, R.C.

2915.02(A)(5), which outlaws possession of gambling machines.[2] A unanimous Supreme Court agreed, reasoning:

> **"Given that the General Assembly clearly enacted R.C. 2915.02(A)(5) to reach criminal possession and control of a gambling device and classified such conduct as a misdemeanor of the first degree under R.C. 2915.02(F), we hold that R.C. 2923.24, a general statute prohibiting possession and control of criminal tools and classifying such conduct as a fourth degree felony, cannot be used to charge and convict a person of possessing and controlling a gambling device. * * *"**

*Volpe*, 38 Ohio St.3d at 194.

{¶29} We find the present case is distinguishable from *Volpe*, in that Crystal, unlike the defendants in *Volpe*, could not have been convicted of the specific offense. The Revised Code defines insurance fraud as follows:

> **(B) No person, with purpose to defraud or knowing that the person is facilitating a fraud, shall do either of the following:**
>
> **(1)    Present to, or cause to be presented to, an insurer *any written or oral statement* that is part of, or in support of, an application for insurance, a claim for payment pursuant to a policy, or a claim for any other benefit pursuant to a policy, knowing that the statement, or any part of the statement, is false or deceptive;**
>
> **(2)    Assist, aid, abet, solicit, procure, or conspire with another to prepare or make *any written or oral statement* that is intended to be presented to an insurer as part of, or in support of, an application for insurance, a claim for payment pursuant to a policy, or a claim for any other benefit pursuant to a policy,**

---

[2] R.C. 1.51 reads: "If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail."

> **knowing that the statement, or any part of the statement, is false or deceptive.**

R.C. 2913.47(B)(1), (2) (Emphasis Added). Pursuant to the foregoing language, the State, in order to prove insurance fraud, must prove that the defendant, or an individual conspiring with the defendant, presented, prepared, or made a "written or oral statement" to the insurer. R.C. 2913.47 defines 'statement' as:

> **[I]nclud[ing], but is not limited to, any notice, letter, or memorandum; proof of loss; bill of lading; receipt for payment; invoice, account, or other financial statement; estimate of property damage; bill for services; diagnosis or prognosis; prescription; hospital, medical, or dental chart or other record; x-ray, photograph, videotape, or movie film; test result; other evidence of loss, injury, or expense; computer-generated document; and data in any form.**

R.C. 2913.47(A)(5). Having considered the foregoing definition, we find that a statement, whether oral or written, can only be made through an affirmative act, not an omission or failure to act.

{¶30} Turning to the facts of the case, we find that the only statement Crystal made to her employer, to CEBCO, or to Anthem occurred in November 2003, when she submitted her enrollment form. The enrollment form listed Steven and Roby as dependents. It is undisputed that Steven and Roby were eligible to receive benefits at the time Crystal submitted the enrollment form. Subsequently, however, Crystal never made any oral or written statements to her employer, to CEBCO, or to Anthem concerning Roby's and Steven's ineligibility. As the State correctly noted during oral arguments, Crystal's inaction could not constitute

insurance fraud, as no oral or written statements were made to the insurer. Consequently, we find that the State was not required to charge Crystal with violating a law she, through her inaction, could not have violated.

{¶31} Theft by deception, unlike insurance fraud, does not require an oral or written statement. Rather, it simply requires the theft to be committed via 'deception,' which is defined as "knowingly deceiving another or causing another to be deceived by * * * withholding information, by preventing another from acquiring information, or by any other * * * omission that creates, confirms, or perpetuates a false impression in another * * *." R.C. 2913.01(A). In light of this definition, the remaining elements of theft by deception, and the facts of the case at bar, we find that the State's amended indictment was proper.

{¶32} Accordingly, we overrule Crystal's first assignment of error.

*Assignment of Error No. II*

{¶33} In her second assignment or error, Crystal contends that the trial court erred in denying her motion to dismiss the amended indictment. Specifically, Crystal contends that the amended indictment failed to identify each instance of theft, the date of each theft, the requisite culpability for each theft, the value of each theft, and how the owner was deprived of property or services in each theft. We disagree.

{¶34} Although Crystal only assigns error to the trial court's denial of her motion to dismiss the amended indictment, her assignment appears to also

challenge the propriety of the bill of particulars. Accordingly, we will discuss the sufficiency of the amended indictment and the bill of particulars.

*Motion to Dismiss an Indictment*

**{¶35}** "The [sufficiency] of an indictment is a question of law, requiring a de novo review." *State v. Reinhart*, 3d Dist. No. 15-06-07, 2007-Ohio-2284, ¶12, quoting *State v. Hernon*, 9th Dist. No. 2933-M, 2000 WL 14009, citing *State v. Smoot*, 2nd Dist. No. 96-CA-107, 1997 WL 432225. A motion to dismiss charges in an indictment tests the sufficiency of the indictment, without regard to the quantity or quality of evidence that may be produced by either the State or the defendant. *State v. Eppinger*, 162 Ohio App.3d 795, 2005-Ohio-4155, ¶37, citing *State v. Patterson* (1989), 63 Ohio App.3d 91, 95. A reviewing court must examine the face of the charging instrument to determine its sufficiency. See *State v. Egler*, 3d Dist. No. 4-07-22, 2008-Ohio-4053, ¶14; *State v. Desote,* 3d Dist. Nos. 12-03-05, 09, 2003-Ohio-6311, ¶8, quoting *Patterson*, 63 Ohio App.3d at 95; *Eppinger*, 2005-Ohio-4155, at ¶37. Pursuant to Crim.R. 7(B), an indictment or information:

> **[M]ay be made in ordinary and concise language without technical averments or allegations not essential to be proved. The statement may be in the words of the applicable section of the statute, provided the words of that statute charge an offense, *or* in words sufficient to give the defendant notice of all the elements of the offense with which the defendant is charged.** (Emphasis Added).

**{¶36}** If the indictment "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and * * * enables him [or her] to plead an acquittal or conviction in bar of future prosecutions for the same offense," it will satisfy federal and state constitutional requirements. *State v. Buehner,* 110 Ohio St.3d 403, 2006-Ohio-4707, ¶9, quoting *State v. Childs,* 88 Ohio St.3d 558, 564-65, 2000-Ohio-425, quoting *Hamling v. United States* (1974), 418 U.S. 87, 117-118. Generally, an indictment is sufficient if it recites the language of the relevant criminal statute. *State v. Siferd*, 151 Ohio App.3d 103, 2002-Ohio-6801, ¶22, citing *State v. Childs*, 88 Ohio St.3d 194, 198, 2000-Ohio-298. The indictment must also "state the numerical designation of the statute that the defendant is alleged to have violated." *Siferd,* 2002-Ohio-6801, at ¶22, quoting Crim.R. 7(B).

**{¶37}** Here, Crystal was indicted with one count of theft by deception. The offense of theft by deception reads in pertinent part:

> **(A)  No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:**
>
> **\* \* \***
>
> **(3)  By deception**

R.C. 2913.02(A)(3). Where there have been multiple theft offenses perpetrated in the offender's employment, R.C. 2913.61(C)(1) requires the State to try all of the offenses as a single offense. R.C. 2913.61(C)(1) provides in pertinent part:

> **When a series of offenses under section 2913.02 of the Revised Code, or a series of violations of, attempts to commit a violation of, conspiracies to violate, or complicity in violation of * * * section 2913.02 * * * of the Revised Code * * * is committed by the offender in the offender's same employment, capacity, or relationship to another, all of those offenses *shall* be tried as a single offense. The value of the property or services involved in the series of offenses for the purpose of determining the value as required by division (A) of this section is the aggregate value of all property and services involved in all offenses in the series.** (Emphasis Added).

{¶38} Upon review of the amended indictment, it is clear that the language contained therein tracks the language of R.C. 2913.02(A)(3), the charged offense, as well as R.C. 2913.61(C)(1), which modifies the manner in which the State must try the case. Furthermore, the amended indictment contains the numerical designation of the statute which Crystal allegedly violated. Accordingly, we find that, on its face, the indictment was sufficient.

{¶39} Crystal contends that the indictment was insufficient because the State failed to identify each theft offense and the value of those offenses.[3] R.C. 2913.61(C)(1) requires the State to charge multiple theft offenses under R.C. 2913.02 as a single offense, and to aggregate the value of the property or services

---

[3] We find Crystal's contention that the indictment should have contained the date of each offense is subsumed by her contention that the indictment should have enumerated each instance of theft by deception. See *State v. Gingell* (1982), 7 Ohio App.3d 364, 367 (The exact dates and times of when the offenses allegedly occurred are not generally required in the indictment, as it is usually irrelevant to the preparation of a defense.); *State v. Sellards* (1985), 17 Ohio St.3d 169, 171.

associated with each theft.[4] R.C. 2913.61(C)(1). According to the plain language of this provision the State is not required to list each instance of theft in the indictment, nor is the State required to list the value of each piece of property or instance of service that was alleged to have been obtained through deception. Instead, the State only needs to identify the multiple theft offenses as a "series of theft offenses," and identify the aggregate value of the property or services obtained via deception. See R.C. 2913.61(C)(4). Furthermore, since the State, in the case at bar, must try multiple theft offenses as a single offense, it stands to reason that the State only needs to identify the requisite culpability (i.e., purposefully), and how the owner was deprived of the property or services (i.e., deceptively) once in the amended indictment, which it did.

{¶40} Crystal further contends that the amended indictment's use of "series of theft offenses" rather than enumerating each instance of theft, left her to speculate as to which theft offense she allegedly committed.[5] We disagree. The amended indictment included the numerical designation of theft by deception, as required by Crim.R. 7(B). We find that the presence of this numerical designation

---

[4] Although not directly addressed in Crystal's appellate brief, Crystal does revisit her contention that the bill of particulars is in conflict with the indictment. Particularly, Crystal contends that the bill of particulars alleges that there were multiple victims, whereas the indictment alleges one victim. The trial court disagreed, and so do we. The bill of particulars states in pertinent part that Crystal "did * * * with purpose to deprive the *insurance company* of the value of said coverage." (Emphasis Added). From this language it is clear that the bill of particulars identifies only one victim, the insurance company. Accordingly, pursuant to R.C. 2913.61(C)(1), the State must aggregate and try the individual theft offenses as a single theft offense. See *State v. Crish,* 3d. Dist. No. 1-08-13, 2008-Ohio-5196.

[5] Pursuant to R.C. 2913.01(K), 'theft offense' is defined to encompass many offenses including, but not limited to, theft by deception (R.C. 2913.02(A)(3)), Medicaid fraud (R.C. 2913.40), passing bad checks (R.C. 2913.11), misuse of credit cards (R.C. 2913.21), insurance fraud (R.C. 2913.47), and receiving stolen property (R.C. 2913.51).

is sufficient to dispel any speculation as to which theft offense Crystal allegedly committed.

**{¶41}** In light of the foregoing, we find that the trial court did not err when it denied Crystal's motion to dismiss the amended indictment, as the amended indictment was sufficient.

*Bill of Particulars*

**{¶42}** Where the indictment fails to fully inform the defendant of the offense with which he or she is charged, the defendant is entitled to a bill of particulars. *State v. Crish*, 3d. Dist. No. 1-08-13, 2008-Ohio-5196, ¶17*, State v. Brown* (1993), 90 Ohio App.3d 674, 681. "Pursuant to Crim.R. 7(E), a bill of particulars shall set forth the 'nature of the offense charged and the conduct of the defendant alleged to constitute the offense.' " *State v. Miniard,* 4th Dist. No. 04CA1, 2004-Ohio-5352, ¶21. "The purpose of a bill of particulars is not to provide the defendant with specifications of the evidence or to serve as a substitute for discovery; rather, the purpose of a bill of particulars is to 'elucidate or particularize the conduct of the accused.' " *State v. Latorres,* 11th Dist. Nos. 2000-A-0060, 0062, 2001 WL 901045, quoting *State v. Lawrinson* (1990), 49 Ohio St.3d 238, 239. A bill of particulars need not include information that is within the knowledge of the defendant or information that a defendant could discover with due diligence. *State v. Sessler*, 3d Dist. No. 3-06-23, 2007-Ohio-4931, ¶11, quoting *Miniard,* 2004-Ohio-5352, at ¶23. Additionally, a bill of particulars need

-20-

not be precise, but rather "need only be directed toward the conduct of the accused as it is understood by the [S]tate to have occurred." *Gingell,* 7 Ohio App.3d at 367.

**{¶43}** Crystal contends that the bill of particulars was not helpful because it did not adequately particularize the conduct which constituted theft by deception. We disagree. Upon review of the bill of particulars we find that the State sufficiently expounded upon the nature of the offense and the conduct which gave rise to the offense. In the bill of particulars Crystal first learns that she is being charged as an accomplice to theft by deception,[6] that the thefts occurred between January 2004 and September 2009, that Steven and Roby were the principal offenders, that she aided them in obtaining health insurance benefits (i.e., services) to which they were not entitled, that her deception was the result of her failure to provide Allen County or Anthem with information that Steven and Roby were no longer eligible to receive benefits, and that as a result of her deceptive omission she deprived Anthem of an aggregate total of over $5,000.00. Although the foregoing information does not particularize every instance of theft, as Crystal contends it should, we find that the bill of particulars meets the parameters of Crim.R. 7(E). Any remaining information, such as the dates and values of each instance of theft, were discoverable. In fact, the record reveals that Crystal, through discovery, obtained all of the EOB forms, which contained the dates and

---

[6] Although Crystal was an accomplice to theft by deception, she may be indicted and convicted as a principal. R.C. 2923.03(F).

values of each alleged theft, police reports, as well as other relevant information in the State's custody. In light of the foregoing, we find that Crystal's contentions pertaining to the inadequacy of the bill of particulars are without merit.

{¶44} Having found that the indictment and bill of particulars were sufficient, we overrule Crystal's second assignment of error.

*Assignment of Error No. III*

{¶45} In her third assignment of error, Crystal contends that her conviction was against the manifest weight of the evidence. Specifically, Crystal contends that Stechschulte's testimony concerning the roller marks was inadmissible "junk science," which caused the trier of fact to lose its way. Crystal further contends that it was improper to indict her criminally, when the issue was civil in nature.[7] We disagree on both accounts.

{¶46} When an appellate court analyzes a conviction under the manifest weight standard it must review the entire record, weigh all of the evidence and all of the reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, superseded by constitutional amendment on other grounds as

---

[7] Although this contention is based in policy, and has nothing to do with the manifest weight of the evidence, we will discuss it under the third assignment of error, but apart from Crystal's contention that Stechschulte's testimony concerning the roller marks caused the trier of fact to lose its way.

stated by *State v. Smith,* 80 Ohio St.3d 89, 1997-Ohio-335, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175. Only in exceptional cases, where the evidence "weighs heavily against the conviction," should an appellate court overturn the trial court's judgment. Id.

*Roller Mark Evidence*

{¶47} Crystal contends that Stechschulte's testimony concerning the roller marks on the bottom of the Change Form found in the Auditor's Office was inadmissible. Specifically, Crystal contends that Stechschulte's test print to determine whether the copier made roller marks that matched those on the Change Form was tantamount to inadmissible "junk science." We disagree.

{¶48} We begin by noting that Crystal did not object to the admissibility of Stechschulte's testimony concerning the test print. Accordingly, we review for plain error. In order to have plain error under Crim.R. 52(B) there must be an error, the error must be an "obvious" defect in the trial proceedings, and the error must have affected "substantial rights." *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68. Plain error is to be used "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Id. Plain error exists only in the event that it can be said that "but for the error, the outcome of the trial would clearly have been otherwise." *State v. Biros*, 78 Ohio St.3d 426, 431, 1997-Ohio-204; see *State v. Johnson*, 3d Dist. No. 2-98-39, 1999-Ohio-825.

**{¶49}** Upon reviewing the record, we find that the trial court's admission of Stechschulte's testimony concerning the test print was not plain error. Although Crystal baldly contends that Stechschulte's testimony was scientific in nature, we find nothing scientific about Stechschulte's test print and subsequent comparison of the Change Form and test page. Any individual of average intelligence could have performed the comparison that Stechschulte performed. See *State v. Smith,* 97 Ohio St.3d 367, 2002-Ohio-6659, ¶40 (doctors' comments on similarity of weave-pattern on victim's face and victim's cushion were not elicited as expert testimony but were instead made in his capacity as a lay witnesses); *State v. Jells* (1990), 53 Ohio St.3d 22, 28-29 (police officer's testimony on footprint comparisons admissible as lay opinion). What is essential is whether Stechschulte's testimony was based on personal knowledge. Here, there is no doubt that Stechschulte possessed personal knowledge about the comparison, as he was the individual who conducted the comparison. In light of the foregoing, we find that Stechschulte's testimony concerning his comparison of the Change Form and test page was properly admitted.

**{¶50}** Moreover, had we found that Stechschulte's testimony concerning the test print was inadmissible, there was other competent, credible evidence tending to prove that the Change Form was a recent creation. Stechschulte testified that the copier located in the Auditor's Office was obtained in 2008; that the previous copier did not make roller marks on the paper; that the present copier

began to make roller marks on the paper in early 2009; and, that the Change Form had roller marks on it similar to those made by the present copier. Alone, this testimony provided sufficient basis for the trier of fact to determine whether the Change Form was a recent creation. Consequently, we do not find that the trier of fact lost its way.

**{¶51}** Accordingly, we find that Crystal's conviction was not against the manifest weight of the evidence.

*Civil Action versus Criminal Action*

**{¶52}** Crystal contends that it was improper to indict her criminally, when the issue was civil in nature. We disagree.

**{¶53}** In support of her contention Crystal cites R.C. 2901.03(A), which reads: "No conduct constitutes a criminal offense against the state unless it is defined as an offense in the Revised Code." By citing this provision, Crystal seemingly contends that her actions do not constitute a crime, and thus she could not be criminally liable. We disagree. Upon review of the record we find that the evidence presented at trial was sufficient for the trier of fact to conclude that Crystal's inaction and the consequences of that inaction met the elements of theft by deception. Consequently, Crystal was properly charged with a criminal offense.

**{¶54}** Accordingly, we overrule Crystal's third assignment of error.

{¶55} Having found no error prejudicial to Crystal herein, in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**PRESTON and WILLAMOWSKI, J.J., confirm.**

**/jnc**