[Cite as *State v. Lowe*, 2021-Ohio-4563.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## LOGAN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLANT,                CASE NO.  8-20-36

    v.

NATHANIEL A. LOWE,

                                     **O P I N I O N**

    DEFENDANT-APPELLEE.

Appeal from Logan County Common Pleas Court
Trial Court No. CR 20 03 0092

**Judgment Reversed and Cause Remanded**

**Date of Decision:  December 27, 2021**

APPEARANCES:

    *Alice Robinson-Bond* **for Appellant**

    *David H. Thomas and Kathryn S. Wallrabenstein* **for Appellee**

    *Natalie V. McGee*, **amicus curiae on behalf of Alyssia C.**

**ZIMMERMAN, J.**

{¶1} Plaintiff-appellant, the State of Ohio, appeals the June 23, 2020 judgment entry of the Logan County Court of Common Pleas, General Division, dismissing the indictment charging defendant-appellant, Nathaniel A. Lowe ("Lowe") with 12 counts of Gross Sexual Imposition ("GSI"). For the reasons that follow, we reverse.

{¶2} On March 10, 2020, the Logan County Grand Jury indicted Lowe on nine counts of GSI in violation of R.C. 2907.05(A)(4) (C)(2), all third-degree felonies and three counts of GSI in violation of R.C. 2907.05(A)(1), (C)(1), all fourth-degree felonies. (Doc. No. 2). Lowe appeared for arraignment on March 16, 2020 and entered pleas of not guilty. (Doc. No. 16).

{¶3} On May 1, 2020, Lowe filed a motion to dismiss the indictment under the theories of double jeopardy, res judicata, and collateral estoppel along with a motion to compel disclosure of grand jury testimony and evidence. (Doc. Nos. 35, 36). The State filed memoranda in opposition to Lowe's motion to dismiss and motion to compel on May 20, 2020, followed by its motions to strike, to seal, and to impose sanctions against the defense. (Doc. Nos. 44, 46, 47, 48).

{¶4} Subsequently, the trial court granted the State's motion to seal Lowe's motion to dismiss with the accompanying exhibits. (Doc. No. 61). On June 17, 2020, the trial court denied the defense's motion to compel and for a more specific

bill of particulars. (Doc. Nos. 62, 64). Further, the trial court denied the remainder of the State's motions to strike and sanction the defense. (Doc. No. 65). Nevertheless, the trial court granted Lowe's motion to dismiss the indictment on June 23, 2020. (Doc. No. 67).

{¶5} On July 16, 2020, the State sought leave of court (in the trial court) to appeal the denial of its motions to strike and for sanctions under R.C. 2945.67 and App.R. 5(C), which was ultimately dismissed for want to jurisdiction.[1] (Doc. Nos. 70, 71, 72, 73, 76, 79). (*See* Doc. No. 77). However, on the same day, the State filed a notice of appeal of the trial court's dismissal of the indictment raising two assignments of error for our review, which we address separately.[2] (Doc. Nos. 74, 75, 76).

### Assignment of Error I

**Whether the lower court erred in dismissing criminal counts alleging gross sexual imposition of four children, based upon determinations in civil juvenile court abuse/neglect/dependency status proceedings.**

{¶6} In its first assignment of error, the State asserts that the trial court erred by dismissing the State's indictment against Lowe based on a judicial determination in an abuse and dependency status proceeding from the Logan County Common

---

[1] Importantly, the State sought leave of court from the trial court and not us. (Doc. Nos. 70, 79). Subsequent to our dismissal of the State's first appeal, the trial court issued a judgment entry determining the State's motion for leave to be moot based on our judgment entry dated August 3, 2020. (Doc. No. 80).
[2] Amicus curiae, Alyssia C., also filed a brief in this appeal. (*See* Case No. 8-20-36, JE, Oct. 23, 2020).

Pleas Family Court, Juvenile Division ("Juvenile Division") that involved the same minor "[c]hild[ren]" as those alleged to be victims in the criminal case. Specifically, the State asserts that it should not have been collaterally estopped from prosecuting Lowe for criminal offenses under a 12-Count GSI indictment filed in Logan County Common Pleas Court, General Division (hereinafter the "trial court") under the facts presented herein.

*Standard of Review*

{¶7} "'A motion to dismiss charges in an indictment tests the sufficiency of the indictment, without regard to the quantity or quality of evidence that may be produced by either the State or the defendant.'" *State v. Carpenter*, 3d Dist. Seneca No. 13-18-16, 2019-Ohio-58, ¶ 87, quoting *State v. Balo*, 3d Dist. Allen No. 1-10-48, 2011-Ohio-3341, ¶ 35, citing *State v. Eppinger*, 8th Dist. Cuyahoga No. 85631, 2005-Ohio-4155, ¶ 37. "'A reviewing court must examine the face of the charging instrument to determine its sufficiency.'" *Id.*, quoting *id.*, citing *State v. Egler*, 3d Dist. Defiance No. 4-07-22, 2008-Ohio-4053, ¶ 14, *State v. Desote*, 3d Dist. Putnam Nos. 12-03-05 and 12-03-09, 2003-Ohio-6311, ¶ 8, and *Eppinger* at ¶ 37.

{¶8} We review a trial court's denial of a motion to dismiss an indictment under a de novo standard of review. *State v. Robertson*, 3d Dist. Henry No. 7-14-16, 2015-Ohio-1758, ¶ 17; *Carpenter* at ¶ 88. "'De novo review is independent,

Case No. 8-20-36

without deference to the lower court's decision.'" *Id.*, quoting *State v. Hudson*, 3d

Dist. Marion, 2013-Ohio-647, ¶ 27.

*Crim.R. 12(C) and a Motion to Dismiss an Indictment*

{¶9} "Crim.R. 12 governs the filing of pleadings and motions before trial,

including pre-trial motions to dismiss." *State v. Stout,* 3d Dist. Logan No. 8-07-12,

2008-Ohio-161, ¶ 11. Crim.R. 12 provides in its pertinent parts:

> **(C) Pretrial motions.** Prior to trial, any party may raise by motion any defense, objection, evidentiary issue, or request *that is capable of determination without the trial of the general issue*. The following must be raised before trial:
>
> (1) Defenses and objections based on defects in the institution of the prosecution;
>
> (2) Defenses and objections based on defects in the indictment, information, or complaint (other than failure to show jurisdiction in the court or to charge an offense, which objections shall be noticed by the court at any time during the pendency of the proceeding);

(Emphasis added.) Crim.R. 12(C)(1)-(2). *See also Stout* at ¶ 11.

{¶10} Normally, the focus of our inquiry (on appeal) as to a motion to

dismiss the indictment is the "sufficiency of the indictment" and not the "quantity

or quality of evidence that may be produced by either the State or the defendant.'"

*Carpenter*, 2019-Ohio-58, at ¶ 87, quoting *Balo*, 2011-Ohio-3341, at ¶ 35, citing

*Eppinger*, 2005-Ohio-4155, at ¶ 37. However, since trial court determined that

collateral estoppel is applicable, we are permitted to look beyond the indictment

itself and to evidence reviewed by the trial court, which includes the evidence that

was offered as exhibits from Juvenile Division. *See Goodson v. McDonough Power Equip., Inc.*, 2 Ohio St.3d 193, 198 (1983) (requiring "close scrutiny of the prior record and decision to identify with precision what issues have in fact been actually litigated and decided in the prior action"); (Def. Exs. A, B, C, D, E, F, G, H).

*Analysis*

{¶11} In the case before us, the trial court concluded that the State was collaterally estopped from prosecuting Lowe in its 12-count GSI indictment that involved the same victims as the minor "[c]hild[ren]" whose abuse and dependency cases were dismissed by Juvenile Division. Specifically, the trial court determined that the Juvenile Division's finding that Lowe did not touch his "[c]hild[ren]" for the purpose of sexual gratification was essential to the dismissal of the abuse and dependency allegations, and as such, required the dismissal of Lowe's pending criminal indictment under the theory of collateral estoppel. We disagree.

*Background*

{¶12} The genesis of this case commenced in the Logan County Common Pleas Family Court, Juvenile Division ("Juvenile Division"). (Def. Exs. A, B, C, D). Specifically, the Logan County Children Service's Agency ("LCCSEA") filed an abuse and dependency complaint involving Lowe's youngest daughter, H.L., together with dependency complaints involving Lowe's other minor daughters, I.L.,

E.L. and S.L. on November 6, 2019.[3] *Id.* The abuse complaint identified Lowe as the person responsible for engaging in "[s]exual activity" with H.L.[4] (Doc. No. A); R.C. 2151.031(A); R.C. 2907.01(A). Further, the dependency complaints alleged that Lowe had "grabbed the buttocks of" S.L., E.L., and I.L. and the "chest" of S.L.[5] (Def. Exs. B, C, D). The foundation of the Juvenile Division complaints concerning S.L., E.L., and I.L. was dependency filed under R.C. 2151.04(C) alleging that these "[c]hild[ren's]" "condition or environment" as a result of the purported "sexual activity" involving H.L. and the facts surrounding the touching of S.L.'s, E.L.'s, and I.L.'s buttocks and S.L.'s breast "warrant[ed] the state, in the interest of the child[ren], in assuming the child[ren]'s guardianship. *See* R.C. 2151.04(C); (Def. Exs. A, B, C, D). Moreover, the facts alleged in all of the "[c]hild[ren's]" complaints are identical. (Def. Exs. A, B, C, D). Ultimately, the complaints involving H.L., S.L., E.L., and I.L., were dismissed after an adjudicatory hearing as

---

[3] The trial court determined that there was privity between the Logan County Prosecutor's Office and LCCSEA. (Doc. No. 67).

[4] Indeed, the facts regarding the abuse allegation in H.L.'s complaint involved purported "[s]exual conduct" by virtue of the alleged digital penetration of H.L.'s vagina. (*See* Def. Ex. A); R.C. 2907.01(A). However, the facts adduced at the adjudicatory hearing involved alleged "[s]exual contact" or the touching of H.L.'s buttocks over her clothing with an old spoon. (*See* Def. Ex. G, Jan. 21, 2020 Tr. at 64-65, 118); R.C. 2907.01(B).

[5] Notably, R.C. 2907.01(B) provides that "[s]exual contact' means *any touching of an erogenous zone of another*, including without limitation the thigh, genitals, *buttock*, pubic region, or, *if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person.* (Emphasis added.). *Compare* R.C. 2907.01(A) (requiring no specific purpose for the "[s]exual conduct"). At the adjudicatory hearing, I.L. testified that Lowe "jiggled" the "[c]hild[ren's]" buttock's cheeks (moving them up and down) over clothing and "tickled" the "[c]hild[ren]" before bed (over clothing) touching their buttocks and breast area, which made them uncomfortable. (*See* Jan. 20, 2021 Tr. at 140-166). She went on to testify that when the "[c]hild[ren]" expressed the need for boundaries that Lowe thought the "[c]hild[ren]" were too young for boundaries. (*See id.* at 143-144).

a result of the Juvenile Division's determination "that there was no proof that [Lowe] engaged in *any of the alleged acts for sexual gratification*". (Emphasis added.) (Def. Ex. E). The Juvenile Division then dismissed the abuse and dependency cases by its judgment entry filed February 4, 2020. (*Id.*). Importantly, the State *did not* appeal that order. (*See id.*); (Doc. No. 67).

{¶13} Nevertheless, the Logan County Grand Jury indicted Lowe on March 10, 2020 on 12 counts of GSI. (Doc. No. 2). Specifically, the indictment named H.L. as the alleged victim of "[s]exual contact" in Count One; S.L. as the alleged victim of "[s]exual contact" in Counts Two through Five; E.L. as the alleged victim of "[s]exual contact" in Counts Six through Nine; and I.L. as the alleged victim of "[s]exual contact" in Counts Ten through Twelve. (Doc. Nos. 2, 26, 43). Further, all of the Counts in the indictment allege that the "[s]exual contact" with the victims occurred "on or about the 1st day of January, 2018 through the 24th day of January 2020", even though the abuse and dependency cases were filed on November 6, 2019.[6] (*Id.*).

*Collateral Estoppel:*

{¶14} The Supreme Court of Ohio has held that "[t]he doctrine of collateral estoppel, or, more correctly, issue preclusion, precludes further action on an

---

[6] The State conceded that there are no allegations of "[s]exual activity" that are alleged in the indictment occurring after February 4, 2020 or the file stamp date of the issuance of Juvenile Division's dismissal entry of the abuse and dependency cases. (June 9, 2020 Tr. at 27); (Doc. No. 67). (*See* Def. Ex. E).

*identical issue* that has been *actually litigated* and determined by a *valid and final judgment* as part of a *prior action* among the *same parties* or *those in privity with those parties*." (Emphasis added.) *State v. Williams*, 76 Ohio St.3d 290, 294 (1996) citing *Hicks v. De La Cruz*, 52 Ohio St.2d 71, 74 (1977); *Goodson v. McDonough Power Equip., Inc.*, 2 Ohio St.3d 193 (1983), paragraph one of the syllabus. "'The essential test in determining whether the doctrine of collateral estoppel is to be applied is whether the party against whom the prior judgment is being asserted had full representation and a "full and fair opportunity to litigate that issue in the first action.""" *Lemons v. State*, 8th Dist. Cuyahoga No. 109188, 2020-Ohio-5619, 36, quoting *Cashelmara Villas Ltd. Partnership v. DiBenedetto*, 87 Ohio App.3d 809, 813 (8th Dist.1993), quoting *Goodson* at 201 and *Hicks* at 74.

> The main legal thread which runs throughout the determination of the applicability of * * * the adjunct principle of collateral estoppel, is the necessity of a fair opportunity to fully litigate and to be "heard" in the due process sense. Accordingly, an absolute due process prerequisite to the application of collateral estoppel is that the party asserting the preclusion must prove that the identical issue was actually litigated, directly determined, and essential to the judgment in the prior action. [internal citations omitted]. Collaterally estopping a party from relitigating an issue previously decided against it violates due process where it could not be foreseen that the issue would subsequently be utilized collaterally, and where the party had little knowledge or incentive to litigate fully and vigorously in the first action due to the procedural and/or factual circumstances presented therein. This latter point was recognized in *State[] ex rel. Westchester, supra*, paragraph two of the syllabus, in which this court held that where there has been a change in the facts since a prior decision, which either raises a new material issue, or which would have been relevant to the resolution of a material issue involved in the earlier action, neither the doctrine of

res judicata nor the doctrine of collateral estoppel will bar litigation of that issue in a later action.

* * *

Many factors, considerations and elements enter into any judgment of a court. There are the tangible, as well as the intangible, elements which have their meaningful effect upon the result of any cause * * *.

The benefits garnered from applying collateral estoppel in any cause must be balanced against the costs associated with its application. The major risk linked to such an application is that of an erroneous determination in the first case.

The principles involved within this consideration have been well expressed in the legal commentary in 46 American Jurisprudence 2d 569-570, Judgments, Section 402, as follows:

'The doctrine of res judicata may be said to adhere in legal systems as a rule of justice. Hence, the position has been taken that the doctrine of res judicata is to be applied in particular situations as fairness and justice require, and that it is not to be applied so rigidly as to defeat the ends of justice or so as to work an injustice.'

* * *

'Underlying all discussion of the problem must be the principle of fundamental fairness in the due process sense. It has accordingly been adjudged that the public policy underlying the principle of res judicata must be considered together with the policy that a party shall not be deprived of a fair adversary proceeding in which to present his case. * * *'

*Goodson*, at 200-202.

### Discussion

{¶15} Significantly, in *Williams*, all the technical requirements of issue preclusion existed: (1) actual litigation of the issue in the previous proceeding, (2)

determination of the issue in the prior action by a valid and final judgment issued by a court of competent jurisdiction—denials of ALS appeals being final, appealable orders under R.C. 2505.02, and (3) privity of the parties. *Williams* at 294-295. The Supreme Court nevertheless held that *still* and *because* the application of issue preclusion would force the State to treat an ALS hearing as, in essence, a mini-trial on the drunk-driving charge, the Court ruled that *exceptional circumstances* weighed against the application of issue preclusion. *Id.* at 296.

{¶16} In *Williams*, the Supreme Court of Ohio recognized that there are exceptions to the general rule of issue preclusion. *Id.* at 295-296. The Supreme Court in *Williams* quoted the 1 Restatement of the Law 2d, Judgments, Section 28, at 273-274 (1980), exceptions three and five and articulated that the Court observed several factors in reaching its holding including recognizing the differences between the administrative (civil) hearing and the criminal proceeding noting that those differences weighed against the application of issue preclusion. *Id.* at 296. Moreover, the Court reasoned that there would be an adverse impact on public safety as a result of the allowance of issue preclusion in this context because the State would be forced to treat an ALS appeal as an essential part of the criminal proceeding and thus defeat the General Assembly's intent in providing for swift administrate (civil) review. *Id.*

**{¶17}** Even if we assume without deciding that Lowe (as in *Williams*) appears to have met all the technical requirements of issue preclusion, under the facts presented, the application of the collateral-estoppel doctrine is still problematic for the same reason as stated by the Supreme Court of Ohio in *Williams*. *See id.* In reaching this conclusion, we observe that "Ohio's juvenile courts are statutory courts, created by the General Assembly." *In re Z.R.*, 144 Ohio St.3d 380, 2015-Ohio-3306, ¶ 14, citing R.C. Chapter 2151 and *State v. Wilson*, 73 Ohio St.3d 40, 43 (1995). *See also In re K.M.*, 159 Ohio St.3d 544, 2020-Ohio-995, ¶ 17. "As a statutory court, the juvenile court has limited jurisdiction, and it can exercise only the authority conferred upon it by the General Assembly." *Id.*, citing *State ex rel. Ramey v. Davis*, 119 Ohio St. 596 (1929), paragraph four of the syllabus.

**{¶18}** Indeed, Ohio's Juvenile Rules, created by the Supreme Court of Ohio, pursuant to Article IV, Section 5 of the Ohio Constitution, were fashioned to ensure uniformity in procedure for Ohio's juvenile courts. *Id.* at ¶ 15, citing *Linger v. Weiss*, 57 Ohio St.2d 97, 100 (1979). "It is well understood that the substantive and procedural rules that are applicable in the unique context of juvenile court proceedings are quite different from those applicable during criminal or civil proceedings in courts of general jurisdiction." *Id.*, citing *In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, ¶ 65-67 and *In re T.R.*, 52 Ohio St.3d 6, 15 (1990).

{¶19} Here, the Juvenile Division's proceedings were commenced solely to determine the *status* of the children as being either "abused" or "dependent". *See* R.C. 2151.01(A); R.C. 2151.031(A); R.C. 2151.04(C); R.C. 2151.27; Ohio Adm.Code 5101:2-1-01(B)(2), (3). Under the specific facts and circumstances of the instant case, the focus of the adjudicatory phase of the abuse and dependency case was upon *the harm to the "[c]hild[ren]"* and to their condition or status and not *parental or custodial blameworthiness*.[7] *See In re Pitts*, 38 Ohio App.3d *1, *5 (5th Dist.1987). *See also State ex rel. Beacon Journal Publishing Co. v. Akron*, 104 Ohio St. 3d 399, 2004-Ohio-6557, ¶ 33, quoting *In re Pitts* at *5 and Giannelli & Yeomans, Ohio Juvenile Law, Section 9:12, at 80 (2004); *In re E.B.*, 8th Dist. Cuyahoga Nos. 109093 and 109094, 2020-Ohio-4139, ¶ 48-50 (citing R.C. 2151.031(A)), quoting *In re T.C.*, 9th Dist. Wayne Nos. 18AP0021 and 18AP0022, 2015-Ohio-4369, ¶ 18 (citing R.C. 2151.031(A)), quoting *In re Pitts* at *5. To us, the Juvenile Division's action in this case was not the type of action where jeopardy attaches under the facts presented since a determination as to Lowe's blameworthiness and potential punishment was not the purpose of the *adjudicatory* proceeding. *See State v. Felter*, 6th Dist. Huron No. H-99-001, 1999 WL 727096, *2.

---

[7] We recognize that a reasonable argument could be made under R.C. 2151.031 that parental culpability may be a necessary determination involving other divisions of the statute; be that as it may, those divisions are not presently at issue, and thus we make no such determination herein. *See* R.C. 2151.031(B), (C), (D).

{¶20} Certainly, abuse and dependency proceedings are bifurcated into "separate adjudicatory and dispositional phases because the issues raised and procedures used at each hearing differ". *In re Pitts*, at *4. *See* Juv.R. 29, 34. This distinction is crucial. If an abuse and dependency case advances to the dispositional phase, the parents are "[p]art[ies]" to the proceeding who may themselves be in need of court-ordered services under the auspices of a "[c]ase plan" to identify family strengths, resolve concerns, and to offer supportive services to ensure permanence for the "[c]hild". *See* Juv.R. 2(Y); R.C. 2151.35; R.C. 2151.353; R.C. 2151.412; Ohio Adm.Code 5101:2-1-01(B)(45), (209) (June 1, 2019) (current version Ohio Adm.Code 5101:2-1-01(B)(50), (216) Aug. 6, 2021). Hence, the focus of the abuse and dependency cases, even at disposition, remains on the best interest and health, safety, and welfare of the "[c]hild" and not the parent who happens to also be an "[a]lleged perpetrator". *See* Juv.R. 34; Ohio Adm.Code 5101:2-1-01(B)(2)(a), (3), (16) (June 1, 2019) (current version Ohio Adm.Code 5101:2-1-01(B)(2)(a), (3), (20) Aug. 6, 2021). *Compare* R.C. 2929.11(A) (Purposes of felony sentencing).

{¶21} The trial court's reliance upon *In re Sarah H.*, 86 Ohio App.3d 455 (12th Dist.1993), is misplaced because *In re Sarah H.* is inapplicable to the case at bar precisely because of this phase distinction. Put more plainly—since the abuse and dependency proceedings in the Juvenile Division never progressed past adjudication, Lowe was never subjected to any dispositional orders (let alone) the

remote and tenuous possibility of a *potential* criminal-type penalty in the form of direct or indirect criminal contempt. In other words, Lowe never faced *any* criminal-type punishment in the abuse and dependency cases under the facts presented.

**{¶22}** Thus, in our judgment, the adjudicatory phase of *this* abuse and dependency case did not involve a finding of parental fault nor did it implicate a potential punishment of Lowe. After our review of the record, we conclude that the trial court's determinations that Lowe was subjected to criminal-type penalties during the abuse and dependency status proceeding on adjudication is erroneous.

**{¶23}** Moreover, the General Assembly has stated that the express purpose of the R.C. Chapter 2151 is "[t]o provide for the care, protection, and mental and physical development of children subject to Chapter 2151. of the Revised Code, whenever possible, in a family environment, separating the child from the child's parents only when necessary for the child's welfare or in the interests of public safety". R.C. 2151.01(A). *See Felter* at *2. Indeed, "[j]eopardy denotes risk." *Breed v. Jones*, 421 U.S. 519, 528, 95 S.Ct. 1779, 1785 (1975). Unlike a criminal proceeding or a delinquency adjudication in Juvenile Court where jeopardy is said to attach because of "the risk traditionally associated with criminal prosecution" "at a proceeding whose object is to determine whether he [or she] has committed acts that violate a criminal law and whose potential consequences include both the

stigma inherent in such a determination and the deprivation of liberty for many years", the purpose of an abuse and dependency proceeding has nothing to do with deprivation of liberty. *Breed*, 421 U.S. 519, 528-530, 95 S.Ct. 1779, 1785-1787. *See* R.C. 2151.01(A). Certainly, the application of the collateral-estoppel doctrine to the facts before us is inappropriate since these two proceedings have fundamentally different purposes.

{¶24} Finally, and equally compelling, the application of the collateral-estoppel doctrine under the facts of this case (where a juvenile-status proceeding on adjudication (that is civil) leads the criminal case) has relevant public-policy considerations that this court *must* contemplate. *See Goodson*, 2 Ohio St.3d at 202. To permit the application of the collateral-estoppel doctrine in this context would have a chilling effect on the protection of abused and dependent children. Specifically, if the State (when in privity with the Agency) suspects an "[a]lleged perpetrator" in an abuse case to be a parent or custodian, it would be forced to treat the "[a]djudicatory hearing" as an integral part of a criminal proceeding involving a potential violation of Chapter 2907 of the Revised Code. *See* Ohio Adm.Code 5101:2-1-01(B)(2)(a), (3), (16) (June 1, 2019) (current version Ohio Adm.Code 5101:2-1-01(B)(2)(a), (3), (20) Aug. 6, 2021). Consequently, such an application would defeat the General Assembly's purposes set forth in R.C. 2151.01(A) because relationships between "[p]ublic children service agenc[ies]" and county

prosecutor's offices would be disrupted so as to avoid privity and abuse and dependency adjudications would be delayed to prevent the collateral-estoppel doctrine's applicability to the criminal case. *See State v. Williams*, 76 Ohio St.3d 290, at 295-297; R.C. 2151.426; Ohio Adm.Code 5101:2-1-01(B)(3); Ohio Adm.Code 5101:2-33-26.

{¶25} Under the specific facts and circumstances of this case, we decidedly reject the proposition that the Juvenile Division's order dismissing an abuse and dependency action created the foundation for which the collateral-estoppel doctrine applies in favor of the defendant against whom a criminal indictment is filed involving alleged victims in a criminal case that happen to be the "[c]hild[ren]" who are the subjects of the dismissed (abuse and dependency) cases. *See* R.C. 2151.011(6).

{¶26} Accordingly, for the foregoing reasons, we conclude that collateral estoppel does not operate to bar the State from prosecuting Lowe under his criminal indictment under the facts presented. Thus, we also conclude that the trial court committed reversible error by granting Lowe's motion to dismiss as to all 12 counts of the indictment against Lowe.

{¶27} Accordingly, the State's first assignment of error is sustained.

**Assignment of Error II**

**Whether the lower court erred in dismissing criminal counts alleging gross sexual imposition of four children based upon**

**information from juvenile court transcripts, children's services records, and counsel-only discovery information.**

**{¶28}** In its second assignment of error, the State asserts that the trial court erred in dismissing the indictment against Lowe based on information that was both confidential and designated as counsel-only-discovery information. However, our ruling on the State's first assignment of error has rendered this argument moot as we have already remanded this case back to the trial court for further proceedings. For this reason, we decline to address these issues under App.R. 12(A)(1)(c).

**{¶29}** Having found error prejudicial to the appellant herein in the particulars assigned and argued in his first assignment of error, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

*Judgment Reversed and*
*Cause Remanded*

**WILLAMOWSKI, P.J., concurs.**

**MILLER, J. concurs in judgment only.**

**/jlr**