[Cite as *State v. May*, 2012-Ohio-5128.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## LOGAN COUNTY

STATE OF OHIO,

     PLAINTIFF-APPELLEE,               CASE NO. 8-11-19

     v.

DANIEL R. MAY,                  O P I N I O N

     DEFENDANT-APPELLANT.

Appeal from Logan County Common Pleas Court
Trial Court No. 10-02-0022

**Judgment Affirmed**

**Date of Decision: November 5, 2012**

APPEARANCES:

    *Marc S. Triplett* **for Appellant**

    *William T. Goslee and Eric C. Stewart* **for Appellee**

**ROGERS, J.**

{¶1} Defendant-Appellant, Daniel May, appeals from the judgment of the Court of Common Pleas of Logan County convicting him of domestic violence and sentencing him to a total prison term of three years and six months. On appeal, May claims that the trial court committed the following reversible errors: (1) admitting testimony regarding May's pre-arrest silence; (2) allowing testimony regarding the out-of-court statements of Diane Gerber, the alleged domestic violence victim; (3) the court calling Gerber as its own witness; (4) admitting evidence of previous physical altercations between May and Gerber; (5) permitting introduction of May's statements to the arresting officers while purportedly in custody; and (6) allowing the State to use its preemptory challenges in a discriminatory manner. May also contends that he was denied effective assistance of counsel and that all of the above errors amounted to a denial of due process. For the reasons that follow, we affirm the trial court's judgment.

{¶2} On March 10, 2010, the Logan County Grand Jury handed down an indictment charging May with two counts of domestic violence in violation of R.C. 2919.25(A). Because each count included a specification that May had been previously convicted of two or more domestic violence offenses, the violations were classified as felonies of the third degree. On April 27, 2010, the State moved to dismiss the original indictment without prejudice on the grounds that the

"victim is uncooperative." (Docket No. 19). The trial court granted the motion that same day.

{¶3} On May 10, 2011, the Logan County Grand Jury handed down a second indictment charging May with four counts of domestic violence in violation of R.C. 2919.25(A). Again, each count included a specification that May had been previously convicted of two or more domestic violence offenses, and the violations were classified as felonies of the third degree.

{¶4} The indictment arose from four incidents in which May allegedly harmed Gerber, his mother.[1] At the time of the incidents, May lived with Gerber and during the course of all these incidents, both May and Gerber were highly intoxicated. The first incident occurred on October 24, 2008. Gerber called the emergency dispatch and reported that May had beaten her. When the deputies arrived at the house, they discovered Gerber with a bloody nose. The second incident took place on January 23, 2010. Gerber again called emergency dispatch to report that May was drunk and naked and had locked her out of the house. She informed deputies that May punched her in the face, which was consistent with the officers' observation of redness and swelling in the area where Gerber said her son punched her.

---

[1] The original indictment arose from the first and second incidents.

{¶5} The third incident occurred on October 17, 2010. Gerber called emergency dispatchers and said she was having trouble with May. When the responding officers arrived, they saw that Gerber's jaw was swollen and that there were red marks on her face. Although Gerber was initially apprehensive about revealing the source of the marks, she eventually relented and said that May had punched her again. The fourth and final incident took place on April 26, 2011. Gerber called emergency dispatchers saying, "Please stop him." Trial Tr., p. 94. The deputies responded and Gerber told them that May had struck her in the face. Further, the officers observed a red mark on Geber's upper left check. On each occasion, the deputies arrested May.

{¶6} On June 24, 2011, the trial court set this matter for trial in early September 2011. On August 24, 2011, the State filed a motion for the trial court to call Gerber as a witness. The motion states that "Gerber gave both written and recorded statements to law enforcement that [May] had beaten her. However, [Gerber] now claims she doesn't remember what happened." (Docket No. 47, p. 1). May did not file a written opposition to the State's motion.

{¶7} The trial commenced on September 1, 2011 and concluded the next day. Voir dire of the jury occurred on September 1, 2011. The State used three of its four preemptory challenges to remove male jurors and a preemptory challenge to remove a male alternate juror. The resulting jury was composed of seven males

and five females. After voir dire, May did not request that the trial court engage in a hearing to probe the State's bases for excluding the male jurors and alternate juror.

{¶8} The State first called the two emergency dispatchers who answered Gerber's calls during each of the incidents described in the indictment. The first witness, Dawn Heppard, answered Gerber's call on October 24, 2008. During her testimony, the State played the recording of Gerber's call on that date, which included the following dialogue:

DISPATCHER: 911, what's your emergency?

DIANE GERBER: My son is beating me. (Indiscernible).

DISPATCHER: I'm sorry?

DIANE GERBER: (Indiscernible).

DISPATCHER: I can't – I can't understand you.

DIANE GERBER: Come to 2385.

DISPATCHER: 2385 what?

DIANE GERBER: 2285.

DISPATCHER: 2385 what road, ma'am?

DIANE GERBER: 2285.

DISPATCHER: 2285?

DIANE GERBER: Yes, ma'am.

DISPATCHER:    What road?

DIANE GERBER:  Just outside of town.

DISPATCHER:    Okay. You said your son was beating you?

DIANE GERBER:  Yeah.

DISPATCHER:    You need a squad for your injuries?

DIANE GERBER:  No, I'll be fine.  Just need somebody (indiscernible).

DISPATCHER:    Ma'am, I can't understand you.  What?

DIANE GERBER:  I'm sorry.  I need somebody to control him.

DISPATCHER:    You need somebody to control him?

DIANE GERBER:  Yes.  Trial Tr., p. 82-83.

May's trial counsel did not object to the playing of this recording or its admission into evidence.

{¶9} The State then called Shannon Reese, the emergency dispatcher who answered Gerber's calls on January 23, 2010, October 17, 2010, and April 26, 2011. Again, the State played the recordings of the emergency calls from those dates. The January 23, 2010 call included the following dialogue:

DISPATCHER:    911, what is your emergency?

DIANE GERBER:  My son is drunk.

DISPATCHER:    Your what?

DIANE GERBER:  My son is drunk.

DISPATCHER: Your son is drunk?

DIANE GERBER: Yeah.

DISPATCHER: What's going on?

DIANE GERBER: He's running around naked.

DISPATCHER: He's what?

DIANE GERBER: He's running around naked.

DISPATCHER: He's running around naked?

DIANE GERBER: Yes, ma'am.

DISPATCHER: Where at?

DIANE GERBER: He's locked me out of the house.

DISPATCHER: He's locked you out of the house?

DIANE GERBER: Yes, ma'am.

DISPATCHER: Okay. Where are you at?

DIANE GERBER: I'm sorry, it's cold out here. It's two (indiscernible).

DISPATCHER: It's what?

DIANE GERBER: I'm thinking. It's 2885 State Route 47.

DISPATCHER: State Route 47?

DIANE GERBER: Yes, ma'am.

DISPATCHER: Are you outside of the house now?

DIANE GERBER:   Yes, ma'am.

DISPATCHER:     Have you been drinking?

DIANE GERBER:   Yes, ma'am.

DISPATCHER:     What's your name?

DIANE GERBER:   Diane Gerber.

DISPATCHER:     It's what?

DIANE GERBER:   Diane Gerber.

DISPATCHER:     Diane Gerber?

DIANE GERBER:   Yes, ma'am.

DISPATCHER:     What's your son's name?

DIANE GERBER:   Daniel May.

DISPATCHER:     It's what?

DIANE GERBER:   Daniel May.

DISPATCHER:     Daniel May?

DIANE GERBER:   Yes, ma'am.  It's cold out here.

DISPATCHER:     What's he doing now?  What's he doing inside?

DIANE GERBER:   I don't know.  I have no idea.

DISPATCHER:     Is he running around naked?

DIANE GERBER:   He was, yes, just a minute ago.  (Indiscernible).
*Id*. at 89-91.

{¶10} The October 17, 2010 emergency call included the following dialogue:

DISPATCHER:    911, what's your emergency?

DIANE GERBER:  I – can you ask – please ask somebody to come out here?  I don't know what the problem is.

DISPATCHER:    What's going on?

DIANE GERBER:  I'm not sure.

DISPATCHER:    Okay.  What aren't you sure about?  What's going on, Diane?

DIANE GERBER:  I don't know (indiscernible).

DISPATCHER:    Know what?  Diane?  What's going on?

DIANE GERBER:  I don't what his problem is.

DISPATCHER:    You don't know what whose problem is?

DIANE GERBER:  No.

DISPATCHER:    Diane, you're going to need to talk to me, tell me what's going on.

DIANE GERBER:  I can't (indiscernible).

DISPATCHER:    He what?

DIANE GERBER:  He's coming back in the house.

DISPATCHER:    He's coming back in the house?

DIANE GERBER:  I got to go.

DISPATCHER:    Diane.

DIANE GERBER: I got to go.

DISPATCHER: You can stay on the phone.

DIANE GERBER: I have to go. *Id*. at 91-93.

{¶11} And, finally, the April 26, 2011 phone call included the following dialogue:

DISPATCHER: 911, what is your emergency? 911. Hello?

DIANE GERBER: Hi.

DISPATCHER: Do you have an emergency?

DIANE GERBER: Yes.

DISPATCHER: What's going on?

DIANE GERBER: Diane Gerber. Please –

DISPATCHER: You need what?

DIANE GERBER: Diane Gerber. Please, stop him.

DISPATCHER: An ambulance? Are you there? I can barely –
*Id*. at 93-94.[2]

May's trial counsel again did not object to either the playing of these recordings or their admission into evidence.

{¶12} After the recordings were played, Deputy Joe Kopus of the Logan County Sheriff's Office took the stand. Deputy Kopus was one of the responding

---

[2] In addition to these transcripts of the phone calls, we have also reviewed State's Exhibit 1, which is a compact disc that contains all four recordings.

officers during each of the incidents charged in the indictment. In addition to these four incidents, he testified that he had been to Gerber's and May's residence multiple other times:

Q:    And in this case, were you dispatched to [Gerber's and May's] home on any of these occasions?

A:    Yes, sir, I was.

Q:    How many of them were you dispatched to?

A:    I was – as far as this case goes, four times. I've been out there other times. I can't give you an exact number how many I've been to the residence.

Q:    Okay. But the – so the four incidents that he's charged with, those four dates, you were – you responded on all four of those dates?

A:    Yes, sir.

Q:    And you've also been out there on other occasions as well[?]

A:    Correct, yeah. *Id*. at 99.

{¶13} Deputy Kopus went on to discuss his interactions with both May and Gerber during his investigations at their residence. For the October 24, 2008 incident, Deputy Kopus recounted that when he arrived at the scene, Gerber and May were sitting together in the living room of their residence and Gerber had a bloody nose. Gerber then told Deputy Kopus that May hit her in the nose. Deputy Kopus took several pictures of Gerber, which were admitted into evidence. He

testified that the pictures show a red mark on Gerber's nose and blood both on her finger and on her bed.

{¶14} Deputy Kopus' investigation of the October 24, 2008 incident also revealed that Gerber and May were possibly involved in an argument before the alleged violence. The testimony reveals the following about this argument:

Q:     Now, in this incident, did you try to find out where this occurred or what the argument was about?

A:     [The other officer] mainly handled the report. I was just a backup officer. Yeah, [Gerber] stated that [May] struck her in the nose. And, you know, she was holding a cloth to her nose. And that was about it.

Q:     And you didn't get into why or what the argument was about?

A:     When [the other officer] asked [May] his side of the story, he stated that he wasn't going to answer any questions. *Id.* at 104.

Meanwhile, Deputy Kopus took a statement from Gerber in which she stated that she was not arguing with May before the alleged violence. This statement also included the following assertions from Gerber regarding the events of the evening:

Q3:    Did [May] hit you[?]

A3:    No

Q4:    Did [May] slap you[?]

A4:    Yes in the nose [and] it started bleeding. State's Exhibit 16.

{¶15} Deputy Kopus then testified regarding the January 23, 2010 incident. He again recounted that Gerber told him that May had hit her, this time in the

upper left eye area. Deputy Kopus observed red marks on Gerber's face where she said she had been hit. He took pictures of Gerber, but he testified that the red marks did not appear in the pictures. Deputy Kopus also testified that May answered questions regarding the incident and denied hitting his mother, but that the deputies still arrested him for domestic violence.

{¶16} As to the October 17, 2010 incident, Deputy Kopus indicated that upon his arrival at the residence, Gerber was outside and was "physically upset." Trial Tr., p. 113. He also testified that after discussing how important it was for Gerber to talk to him about the evening's events, Gerber stated "'well, I will just let him kill me next time.'" *Id*. She then told Deputy Kopus that May hit her in the left jaw area, which is where he saw various red marks and some swelling.

{¶17} Deputy Kopus recorded his conversation with Gerber and May during this incident and the State played the recording, which was received into evidence.[3] The recording reveals that at first, Gerber denied that May hit her. However, later in her conversation with Deputy Kopus, Gerber stated that May had threatened her several times and started to cry. She then said that she wanted to get away from May and then stated that May had hit her in the jaw. Gerber then said that during her emergency call earlier that she hung up because she did not want May to see her talking on the phone.

---

[3] We have reviewed both the transcript of the recording and State's Exhibit 2, which is a compact disc containing the recording.

{¶18} The remaining portion of the recording featured Deputy Kopus's conversation with May. May's trial counsel objected to the playing of the remaining portion because it was highly prejudicial to May. The trial court, however, overruled the motion. During the course of the conversation, May denied hitting his mother and admitted to an aggravated menacing arrest and domestic violence convictions. Despite May's denial, the deputies said that they were going to arrest him for domestic violence, which May said would cause him to serve 30 days in prison. After the deputies informed May that he was under arrest, he became uncooperative and started to resist. Once the deputies subdued May, he was placed under arrest and transported to the county jail.

{¶19} Deputy Kopus then testified regarding the April 26, 2011 incident. He said that he found Gerber with a red mark and swelling in her upper cheek area that day. Deputy Kopus also indicated that Gerber said that that was the area where May hit her.

{¶20} Again, Deputy Kopus recorded his conversations during the course of his on-scene investigation.[4] The recording reflects that Gerber said May threatened to kill her. After first saying that her argument with May was verbal, Gerber then said May had actually hit her. The following exchange occurred regarding Gerber's cooperation with May's prosecution:

---

[4] We have reviewed both the transcript of the recording and State's Exhibit 3, which is a compact disc containing the recording.

DEPUTY: What do you want done, Diane?

DIANE GERBER: I want him to get some help.

DEPUTY: Yeah. But when you do this and we charge him you change your story every single time.

DIANE GERBER: I know.

DEPUTY: I don't have a problem doing my job, but every time you go in front of the judge you say you don't remember or you say it never happened or you say that the officers lied about it.

DIANE GERBER: Well, I know I said all three. *Id*. at 150.

**{¶21}** She also indicated that May had broken her teeth "six or eight times." *Id*. at 153. Deputy Kopus then arrested May after he had denied hitting his mother. Deputy Kopus also indicated that Gerber gave a written statement on April 26, 2011 to his partner, Logan County Deputy Sheriff Joe Layman. This statement included the following:

Q: How did you get the injury (bump) over your left eye? Cheek bone.

A: [May] slapped me.

* * *

Q: Do you want to file charges against [May] for assaulting you?

A: It was a slap, more of a verbal [sic]. I dont [sic] want him to get a felony. I need to get some help. State's Exhibit 17.

-15-

Moreover, Deputy Kopus testified that Gerber's injuries were consistent with "getting struck or slapped by someone who is right handed." Trial Tr., p. 167. He also indicated that May was right handed.

{¶22} On cross-examination, Deputy Kopus admitted that Gerber and May were not fighting when he responded to these four incidents. Indeed, he acknowledged that he did not hear "a lot of yelling, screaming, [and] chaos" when he was on the scene. *Id*. at 169. Deputy Kopus also admitted that he had never seen May hit his mother. He also recounted a separate incident in which he responded to the house and arrested Gerber for persistent disorderly conduct after she threatened violence against May. He stated that during this incident, May was not abusive or mean towards Gerber.

{¶23} After Deputy Kopus stepped down, the trial court granted the State's motion and called Gerber as its own witness, without objection by May's trial counsel. She testified that she could not recall anything about any of the four incidents. But, Gerber said that she would not deny the deputies' testimony that she did call 911 and made a complaint of domestic violence.

{¶24} On cross-examination by the State, the following exchange occurred:

Q:     Would your argument – would your arguments turn into fighting at all?

A:     No, sir.

Q:     Has Daniel ever hit you?

A: No. *Id.* at 205.

Gerber also reiterated that she could not recall any of the incidents or making any of her statements to the deputies. But, she acknowledged that if the deputies had said she made them, then she must have. Then, on cross-examination by May's counsel, Gerber indicated that she was not afraid of May. She also recounted the incident in which she called emergency dispatchers simply because she could not find her son after she woke up from a nap.

{¶25} After Gerber's testimony concluded, the State called Logan County Deputy Sheriff Tony Robinson. In addition to generally corroborating Deputy Kopus's testimony regarding the October 24, 2008 incident, Deputy Robinson reiterated that May did not answer questions during the deputies' investigation. Deputy Robinson also referred to other incidents in which he was called to the residence when May was verbally abusive towards his mother.

{¶26} The State then called Logan County Deputy Sheriff Thomas Meek, who essentially provided the same testimony regarding the January 23, 2010 incident as Deputy Kopus. Deputy Meek's testimony indicated that when he arrived at the house, he observed that Gerber was still locked outside the house and that May was still naked. Further, upon the deputies' arrival, Gerber immediately started to give her statement to the deputies, including that May had hit her.

{¶27} Finally, the State called Deputy Layman for the purpose of discussing the April 26, 2011 incident. When Deputy Layman arrived at Gerber's and May's house, he observed that Gerber was "uneasy with whatever was going on in the house." Trial Tr., p. 259. He also reiterated Gerber's statements that May was verbally abusive and had threatened her life.

{¶28} Once Deputy Layman stepped down and the State's exhibits were admitted, the State rested. May's trial counsel moved, pursuant to Crim.R. 29, for acquittal on the grounds that the State failed to provide sufficient evidence for a reasonable jury to find beyond a reasonable doubt that May was guilty of any of the charges. The trial court denied the motion.

{¶29} In his defense, May recalled Gerber to the stand. A portion of Gerber's testimony refers to May's purportedly peaceful character:

Q: Have you ever seen [May] be violent or hurt or be aggressive toward anyone? . . . Have you ever seen anything like? Does he go out to bars?

A: No.

Q: He's never gone out to a bar and then come home drunk or anything?

A: No.

Q: You never had any knowledge, personal, that you know he was ever in a bar fight, let's just say?

A: (Shakes head). *Id*. at 294.

After Gerber completed her testimony, May rested.

{¶30} It is important to note that during the course of the trial proceedings, May's trial counsel entered no other objection to any of the testimony that the State adduced or the exhibits that it offered into evidence, except for the objection to a portion of the October 17, 2010 recording on unfair prejudice grounds. Also, the parties stipulated to May's previous convictions for domestic violence.

{¶31} On September 2, 2011, the jury returned a verdict of guilty on all of the charges alleged in the indictment. May renewed his motion for acquittal under Crim.R. 29, but the trial court again denied it. On September 7, 2011, the trial court issued a judgment entry reflecting the verdict. The trial court then proceeded to the sentencing phase. On October 14, 2011, the trial court held a sentencing hearing. The trial court entered an sentence of three years and six months in prison. This sentence was journalized in a judgment entry filed on October 18, 2011.

{¶32} May filed this timely appeal, presenting the following assignments of error for our review.

*Assignment of Error No. I*

**THE TRIAL COURT ERRED WHEN IT ADMITTED TESTIMONY THAT APPELLANT REFUSED TO PROVIDE THE DEPUTIES WITH A STATEMENT.**

*Assignment of Error No. II*

**THE TRIAL COURT ERRED WHEN IT ADMITTED THE TESTIMONY OF OFFICER KOPUS AND THE DISPATCHERS OF THE LOGAN COUNTY SHERIFF'S DEPARTMENT ABOUT THE CONTENTS OF THE STATEMENTS MADE BY DIANE GERBER.**

*Assignment of Error No. III*

**THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT GRANTED APPELLEE'S MOTION AND CALLED DIANE GERBER AS ITS OWN WITNESS.**

*Assignment of Error No. IV*

**THE TRIAL COURT ERRED WHEN IT ADMITTED EVIDENCE THAT APPELLANT AND HIS MOTHER HAD PURPORTEDLY PREVIOUSLY HAD PHYSICAL ALTERCATIONS.**

*Assignment of Error No. V*

**THE TRIAL COURT ERRED WHEN IT ADMITTED APPELLANT'S STATEMENTS TO THE ARRESTING OFFICERS.**

*Assignment of Error No. VI*

**THE TRIAL COURT ERRED WHEN IT PERMITTED THE PROSECUTION TO EMPLOY ITS PREEMPTORY CHALLENGES IN A GENDER-DISCRIMINATORY MANNER.**

*Assignment of Error No. VII*

**THE ACTS AND OMISSIONS OF TRIAL COUNSEL DEPRIVED APPELLANT OF HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.**

***Assignment of Error No. VIII***

**THE COMBINED EFFECT OF ALL THE ERRORS IDENTIFIED IN THIS BRIEF DEPRIVED APPELLANT OF DUE PROCESS AND A FAIR TRIAL.**

*Assignment of Error No. I*

**{¶33}** In his first assignment of error, May contends that it was erroneous for the trial court to admit testimony that he refused to answer the deputies' questions during the investigation of the October 24, 2008 incident. We disagree.

**{¶34}** We preliminarily note that May did not raise an objection to the admission of this evidence in the trial court. Consequently, our review is limited to the existence of plain error in the trial court proceedings. *See State v. Balo*, 3d Dist. No. 1-10-48, 2011-Ohio-3341, ¶ 48. To have plain error under Crim.R. 52(B), there must be an error that both constitutes an "obvious" defect in the trial proceedings and affects "substantial rights." *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). Plain error is to be used "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id*. Plain error exists only in the event that it can be said that "but for the error, the outcome of the trial would clearly have been otherwise." *State v. Biros*, 78 Ohio St.3d 426, 436 (1997); *see State v. Johnson*, 3d Dist. No. 2-98-39 (June 30, 1999).

**{¶35}** The United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself."[5] Fifth Amendment to the United States Constitution. The Ohio Supreme Court has interpreted this clause as precluding the State from offering evidence of pre-arrest silence as substantive evidence of the criminal defendant's guilt. *See State v. Leach*, 102 Ohio St.3d 135, 2004-Ohio-2147, ¶ 30 ("[T]he use of [a defendant's] pre-arrest silence in the [S]tate's case-in-chief as *substantive* evidence of guilt subverts the policies behind the Fifth Amendment."). In *Leach*, the State referred to the defendant's pre-arrest silence in its opening statement and purposefully elicited testimony to that effect from the investigating officers. Meanwhile, the other evidence of the defendant's guilt was "not overwhelming." *Id.* at ¶ 38. Consequently, the Court found that the State offered the defendant's pre-arrest silence as substantive evidence of guilt and reversed his conviction. *Id.*

**{¶36}** This court has been presented with *Leach*-based challenges in two relevant cases. In *State v. Castle*, 3d Dist. No. 8-06-27, 2007-Ohio-3599, the testifying officer made a "vague, isolated remark" regarding the defendant's failure to answer police questions. *Id.* at ¶ 35. Further, "[n]othing in the record indicate[d] that the prosecution intentionally elicited the remark; that the remark

---

[5] The Ohio Constitution uses the same language to establish the right of criminal defendants against self-incrimination. Ohio Constitution, Article I, Section 10. Accordingly, the Ohio Constitution's self-incrimination privilege provides the same degree of protection to criminal defendants in this regard as the United States Constitution does. *See State v. Farris*, 109 Ohio St.3d 519, 2006-Ohio-3255, ¶ 47 ("[W]hen provisions of the Ohio Constitution and United States Constitution are essentially identical, we should harmonize our interpretations of the provisions.").

equated silence with guilt; or that the remark harmed [the defendant] in any way." *Id*. As a result, we found no reversible error. Similarly, in *State v. Rick*, 3d Dist. No. 9-08-27, 2009-Ohio-785, we found that the testifying officer's comment on pre-arrest silence was permissible because it "was only cited to show the chronology of events on the night [that the defendant] was apprehended." *Id*. at ¶ 48.

**{¶37}** Here, both Deputy Kopus and Deputy Robinson indicated that May did not answer questions regarding the October 24, 2009 incident. A review of their testimony and the State's arguments shows that this matter is factually distinguishable from *Leach* and instead falls into the *Castle/Rick* ambit of cases. Unlike *Leach*, the State did not refer to May's pre-arrest silence in its opening statement. Further, as in *Castle*, there is no indication that the State intended to elicit testimony that May failed to respond to questions regarding the charged incidents. Rather, like *Rick*, the record reflects that Deputy Kopus' and Deputy Robinson's testimony regarding May's pre-arrest silence occurred in the course of them describing the investigation of the October 24, 2008 incident. In light of this evidence, we find no plain error in the trial court's admission of the testimony regarding May's pre-arrest silence. *Compare Sate v. Riffle*, 9th Dist. No. 07CA0114-M, 2008-Ohio-4155, ¶ 16 (finding that three references to the

defendant's pre-arrest silence during case-in-chief and closing statement constituted substantive evidence of guilt and produced reversible error).

**{¶38}** Accordingly, we overrule May's first assignment of error.

*Assignment of Error No. II*

**{¶39}** In his second assignment of error, May argues that the trial court improperly allowed the testimony of Deputy Kopus and the Logan County Sheriff's Department emergency dispatchers regarding Gerber's out-of-court statements. Specifically, May claims that the statements amount to inadmissible hearsay that falls under no exception. The State counters that the statements were admissible as excited utterances or present sense impressions.[6] We disagree with May and find that the challenged statements all fall under a hearsay exception.

**{¶40}** As a threshold matter, we again note that May did not object to the admission of these out-of-court statements at trial. Consequently, we employ plain error review. *See Balo*, 2011-Ohio-3341, at ¶ 48.

*Evidentiary Rules for Hearsay*

**{¶41}** Hearsay is "a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter

---

[6] The State also suggests that the statements potentially fall under the statement of then existing mental, emotional, or physical condition hearsay exception. *See* Evid.R. 803(3). Statements admitted under this exception "cannot include an explanation as to why the declarant was of that particular [condition]." *State v. Stewart*, 75 Ohio App.3d 141, 152 (11th Dist. 1991), citing *State v. Apanovitch*, 33 Ohio St.3d 19, 21 (1987). Except for Gerber's statements regarding the mere existence of her injuries, none of the statements implicated in this Assignment of Error are covered by the then existing mental, emotional, or physical condition because they all involve explanations by Gerber as to the source of her injuries.

asserted." Evid.R. 801(C). Evid.R. 802 generally prohibits the admission of hearsay unless the offered hearsay statement is covered by a specific exception. Two such exceptions are possibly applicable in this matter.

**{¶42}** First, the present sense impression exception allows the admission of a hearsay statement if it "describe[s] or explain[s] an event or condition while the declarant was perceiving the event or condition, or immediately thereafter unless circumstances indicate lack of trustworthiness." Evid.R. 803(1). "The principle underlying this exception is the assumption that statements or perceptions, describing the event and uttered in close temporal proximity to the event, bear a high degree of trustworthiness." *Cox v. Machinery Co.*, 41 Ohio App.3d 28, 35 (12th Dist. 1987). Accordingly, "central to the admission of statements of present sense impression is the temporal proximity of the statements to the event at issue." *State v. Graves*, 9th Dist. No. 08CA009397, 2009-Ohio-1133, ¶ 4, *vacated on other grounds*, 2011-Ohio-5997; *see also Cox* at 35-36 ("The key to the statement's trustworthiness is the spontaneity of the statement, either contemporaneous with the event or immediately thereafter."). While temporal proximity is critical to a present sense impression analysis, there is no bright line rule as to what amount of elapsed time precludes a finding that the exception applies. Indeed, some courts have found that the exception applies even where the

statement was made up to an hour after the event perceived. *See, e.g.*, *State v. Travis*, 165 Ohio App.3d 626, 2006-Ohio-787, ¶ 37 (2d Dist.).

{**¶43**} Second, the excited utterance exception permits the introduction of "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Evid.R. 803(2). For a statement to satisfy Evid.R. 803(2)'s excited utterance exception, the following four elements must be present:

> (1) the event must be startling enough to produce a nervous excitement in the declarant,
> (2) the statement must have been made while the declarant was still under the stress of excitement caused by the event,
> (3) the statement must relate to the startling event, and
> (4) the declarant must have personally observed the startling event.
> *State v. Tebelman*, 3d Dist. No. 12-09-01, 2010-Ohio-481, ¶ 27, citing *State v. Taylor*, 66 Ohio St.3d 295, 300-01 (1993).

Further, "[t]he controlling factor is whether the declaration was made under such circumstances as would reasonably show that it resulted from impulse rather than reason and reflection." *State v. Humphries*, 79 Ohio App.3d 589, 598 (12th Dist. 1992).

*Gerber's October 24, 2008 Telephone Call*

{**¶44**} The courts have consistently noted that "911 calls are generally admissible as excited utterances or present sense impressions." *State v. Johnson*, 10th Dist. No. 08AP-652, 2009-Ohio-3383, ¶ 22. Based on our review of Gerber's

telephone call to the Logan County Sheriff's emergency dispatch on October 24, 2008, we find that it fits into this general trend.

{¶45} Two of Gerber's statements in the 911 call are central to our review. First, she stated that "[m]y son is beating me" and second, she said, "I need somebody to control him." Trial Tr., p. 82-83. While there is no concrete evidence in the record establishing the exact time of the alleged abuse, these statements suggest that May hit his mother shortly before the call. It is unlikely that Gerber would request help "control[ling]" May unless she was perceiving a present threat to her safety. Further, her use of the present participle "beating" also indicates that May's alleged abuse was ongoing at the time of the call. Under these facts, we find that Gerber's statements in the October 24, 2008 emergency dispatch call were present sense impressions.

{¶46} Moreover, even if the statements were not present sense impressions, they were excited utterances. Gerber indicated that she needed somebody to control May, which suggests that she was under the stress of possible physical harm at the time that she made the call. May seizes upon Gerber's statement in the 911 call that "I'll be fine" to argue that she was not under the stress of excitement. *Id.* at 83. However, Gerber did not say "I *am* fine." She said, "I'*ll be* fine," suggesting that at the time of the call she was not "fine." As a result, May's

reliance on this statement is misplaced since it actually signals that Gerber was under the stress of May's alleged abuse at the time of the call.

**{¶47}** Consequently, we find that it was not plain error for the trial court to admit Gerber's statements in this 911 call into evidence.

*Gerber's Statements to Deputy Kopus on October 24, 2008*

**{¶48}** Deputy Kopus testified that Gerber informed him during his investigation of the October 24, 2008 incident that May had hit her. The State also offered a written statement from Gerber regarding May's alleged abuse that evening.[7] A review of the record discloses that the trial court properly admitted Gerber's statements.

**{¶49}** Again, there is no concrete indication in the record exactly when the alleged abuse occurred. However, when Deputy Kopus arrived on the scene, Gerber's nose was still bleeding from the alleged abuse and she was holding a towel to it. This evidence, combined with Gerber's statements in her 911 call, indicates that the alleged abuse occurred shortly before Gerber made her oral statement to Deputy Kopus. Further, it also reflects that Gerber was still under the stress of the abuse when she made her statement. As such, her oral statements to Deputy Kopus were admissible as an excited utterance. While it may have been error to admit the written statement, we find it to be cumulative and harmless in

---

[7] We note that in his appellate brief, May challenges the reading of the written statement into the record, but that he does not explicitly challenge the admission of the written statement into the record as State's Exhibit 16.

this case. Consequently, we find that it was not plain error for the trial court to admit Deputy Kopus' testimony regarding Gerber's statements to him.

*Gerber's January 23, 2010 Telephone Call*

{¶50} Gerber's telephone call to the Logan County emergency dispatchers on January 23, 2010 included two relevant statements: (1) May was running around naked; and (2) Gerber was locked out of the house in the cold weather. There is no indication in the record that these events were not occurring at the time that Gerber made her statements to the dispatcher. Further, when Deputy Kopus and Deputy Meek arrived at the house, May was still naked and Gerber was still locked outside. Based on this, Gerber's statements are plainly within the present sense impression exception.[8] Moreover, even if the statements were not within a hearsay exception, their admission would be harmless because Gerber did not suggest that she suffered any physical abuse during the telephone call. Consequently, we find that it was not plain error for the trial court to admit Gerber's statements in her 911 call on January 23, 2011.

*Gerber's Statements to Deputies on January 23, 2010*

{¶51} During the deputies' investigation of the January 23, 2010 incident, Gerber once again told the responding deputies that May had hit her. Both Deputy

---

[8] Since Gerber made the statements while she was still locked out, there is also a sufficient basis to conclude that she was under stress so as to bring statements under the excited utterance exception.

Kopus and Deputy Meek testified as to these statements. A review of the record discloses that the statements are admissible as present sense impressions.

**{¶52}** Deputy Meek testified that when he and Deputy Kopus arrived at the house, they discovered Gerber locked outside with May still inside naked. Deputy Meek further stated that upon their arrival, Gerber immediately said that May had struck her. This close temporal proximity between Gerber's statement and the described event satisfies the present sense impression exception. *Compare Travis*, 165 Ohio App.3d 626, 2006-Ohio-787, at ¶ 37 (finding that declarant's statement to police was admissible where statement related to events that occurred an hour beforehand and were immediately given after police arrived) *with State v. May*, 7th Dist. No. 10 CO 23, 2011-Ohio-6637, ¶ 41 (finding that declarant's statement regarding described events was not covered by present sense impression because declarant did not make statement until long after the deputies had arrived on scene to investigate).[9] Consequently, we find that it was not plain error for the trial court to admit Gerber's statements to the deputies on January 23, 2010.

*Gerber's October 17, 2010 Telephone Call*

**{¶53}** Gerber's telephone call to the Logan County emergency dispatchers on October 17, 2010 included two relevant statements: (1) May was coming back into the house; and (2) Gerber said she had to get off the phone. These statements

---

[9] Moreover, Gerber's statement was made while she was under the shock of having seen her son nude in her bedroom and having been locked outside of the house on a cold evening. This evidence is sufficient to establish the applicability of the excited utterance exception.

suggest that Gerber was contemporaneously observing May at the time of the phone call and that she was fearful that May would find her on the telephone. Indeed, she later told the deputies that she hung up the phone because she was afraid that May would discover her. Based on this, Gerber's statements in the telephone call are properly considered either present sense impressions or excited utterances and they were accordingly admissible. Further, even if the statements were inadmissible, their admission would be harmless error because the statements do not indicate that May had abused Gerber.

**{¶54}** May points to Gerber's failure to identify the nature of the emergency in her 911 call to indicate that she was not under stress at the time of the call. This failure does little more than reinforce Gerber's reluctant nature in reporting May's alleged abuse. Further, it could be seen as implying that Gerber was unwilling to identify the emergency out of fear that May would take adverse action against her. As a result, we decline to adopt May's reasoning. Consequently, we find that it was not plain error for the trial court to admit Gerber's October 17, 2010 telephone call.

*Gerber's Statements to Deputies on October 17, 2010*

**{¶55}** Deputy Kopus testified that Gerber was "physically upset" when she made her statements to the deputies on October 17, 2010. Trial Tr., p. 113. The recording of her statements disclosed that Gerber repeatedly said she could not

-31-

handle the situation anymore and that she needed to get away from May. Further, Gerber cried at several points in the conversation. This evidence suggests that Gerber was distressed throughout her statements. As such, the statements were admissible as excited utterances. Consequently, we find that it was not plain error for the trial court to admit Gerber's statements to the deputies on October 17, 2010.

*Gerber's April 26, 2011 Telephone Call*

**{¶56}** Gerber's 911 telephone call on April 26, 2011 merely included her statement that there was an emergency and that she wanted somebody to stop "him." *Id*. at 93-94. Her request that someone come to control May indicates that there was ongoing conduct and that Gerber was fearful for her personal safety. As a result, the statements are either excited utterances or present sense impressions and are properly admissible. Consequently, we find that it was not plain error for the trial court to admit Gerber's statements during her telephone call on April 26, 2011.

*Gerber's Statements to Deputies on April 26, 2011*

**{¶57}** Deputy Layman testified that when Deputy Kopus and he arrived at Gerber's and May's house on April 26, 2011, Gerber appeared "uneasy with whatever situation was going on inside the house." *Id.* at 259. Further, Deputy Kopus' testimony indicated that May had threatened to kill Gerber and was

verbally abusive to her. These facts suggest that Gerber was under stress of the alleged abuse when she made her statements. As such, her statements to the deputies on April 26, 2011 fall under the excited utterance exception.

{¶58} May claims that there was no basis for an excited utterance finding because Gerber did not explicitly state that she was afraid of May. While Gerber did not explicitly admit her fear, her statements reflect that she was afraid of May. She wanted deputies to come to her house to control him. And, she was on the receiving end of death threats from him. Based on this evidence, we find May's argument to be unpersuasive. Consequently, we find that the trial court did not commit plain error in admitting Gerber's statements to the deputies on April 26, 2011.

*May's Arguments for Inadmissibility*

{¶59} May's counterargument regarding the applicability of the excited utterance exception narrowly focuses on the deputies' description of Gerber as highly intoxicated. This description is immaterial to the admissibility of the above evidence, and goes only to the weight of the evidence. Rather, our analysis focuses on the statements, actions, and demeanor of Gerber. She called emergency dispatchers requesting assistance in controlling or stopping May. When the deputies responded, they found her once with a bloody nose, once she was "physically upset," and once she was "uneasy." These items of evidence

provide a sufficient basis for a finding that Gerber's statements were admissible as excited utterances and her intoxication does not render this conclusion invalid.

**{¶60}** May also suggests that for the excited utterance exception to apply in this matter, Gerber had to be uncontrollably shaking or in an extreme state of fear. Despite May's suggestion, he has not cited any case requiring such a showing. In light of this and our application of plain error review, the evidence of Gerber's distress discussed above is sufficient to satisfy the excited utterance exception.

**{¶61}** May's contention that the present sense impression exception does not apply is also unavailing. The exception applies both where the declarant's statement relates to his contemporaneous observation of the described event and where the declarant made his statement soon after observing the described event. *State v. Urso*, 195 Ohio App.3d 665, 2011-Ohio-4702, ¶ 69 (11th Dist.) (finding that statement was admissible because declarant described events as he was perceiving them); *Travis*, 165 Ohio App.3d 626, 2006-Ohio-787, at ¶ 37 (finding that declarant's statement to police was admissible where statement related to events that occurred an hour beforehand). Thus, the present sense impression exception still applies here and we decline to read the exception as narrowly as May suggests we do.

**{¶62}** Accordingly, we overrule May's second assignment of error.

*Assignment of Error No. III*

**{¶63}** In his third assignment of error, May claims that the trial court abused its discretion by granting the State's motion for the trial court to call Diane Gerber as its own witness. We disagree.

**{¶64}** Evid.R. 614(A) provides: "The court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called." Further, Evid.R. 614(C) requires that objections to the trial court's calling of a witness be made either at the time of the calling or shortly thereafter. May did not present any objection to the trial court's calling of Gerber as its own witness. He filed no written opposition to the State's motion, nor did his trial counsel orally contest the calling of Gerber. As such, May has waived appellate review of this issue. *State v. Davis*, 79 Ohio App.3d 450, 455 (4th Dist. 1992) ("The failure of a party to object in accordance with Evid.R. 614(C) waives consideration of the claimed error on appeal * * *."); *see also State v. Brown*, 11th Dist. No. 2001-T-0146, 2003-Ohio-2364, ¶ 38-39 (finding waiver of Evid.R. 614 issues when not raised in court below); *Metaullics Sys. Co. L.P. v. Molten Metal Equip. Innovations, Inc.*, 110 Ohio App.3d 367, 373 (8th Dist. 1996) (same).

**{¶65}** Even if the issue was not waived, the record reflects that the calling of Gerber as the trial court's witness did not prejudice May. Gerber testified that

May had not hit her and that she could not remember the incidents included in the indictment. Further, Gerber was subject to cross-examination by May's trial counsel. And, May's trial counsel even recalled Gerber as a defense witness. Based on this record, we find no error in the trial court's calling of Gerber as its own witness.

**{¶66}** Accordingly, we overrule May's third assignment of error.

*Assignment of Error No. IV*

**{¶67}** In his fourth assignment of error, May contends that the trial court erroneously allowed evidence regarding previous physical altercations between May and Gerber. We disagree.

**{¶68}** Again, we preliminarily note that May did not object to the admission of this evidence in the trial court. Consequently, May has "waived any challenge to the admission of evidence on appeal, save plain error." *Shanklin v. Lowman*, 3d Dist. No. 8-10-07, 2011-Ohio-255, ¶ 46; *see also Balo*, 2011-Ohio-3341, ¶ 8.

**{¶69}** Evid.R. 404(B) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." However, there are exceptions to the general rule: "It may, however, be admissible for other purposes, such as proof of motive, opportunity,

intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

*Id.*

**{¶70}** In his appellate brief, May identifies several portions of the trial transcript in which the State purportedly offered evidence that is inadmissible under Evid.R. 404(B) because it demonstrates May's previous bad acts. These portions of the transcript reveal the following evidence: (1) the deputies have been to Gerber's and May's house several times in addition to the incidents described in the indictment; (2) Gerber refused to assist in previous prosecutions of May; (3) May has previous domestic violence convictions and an arrest for aggravated menacing; and (4) May broke his mother's teeth on previous occasions. We address each of these items in turn.

*Previous Police Visits*

**{¶71}** The evidence that the deputies have visited Gerber's and May's house on previous occasions other than the ones charged in the indictment does not amount to "other acts" evidence that is inadmissible under Evid.R. 404(B). There was no testimony indicating that the deputies observed May engage in any bad acts or arrested him during these other visits. Indeed, except for one occasion, the record is devoid of any evidence as to why the deputies visited the house or what they observed during these visits. As to this one exception, the evidence

adduced established that the deputies visited because Gerber was unable to find May and that she was arrested for disorderly conduct as a result of her actions.[10]

**{¶72}** Even if the visits were inadmissible, the error would have been harmless. *See State v. Brown*, 100 Ohio St.3d 51, 2003-Ohio-5059, ¶ 25 (stating that harmless error "is any error that does not affect the outcome of the case and, thus, does not warrant a judgment overturned or set aside."). The evidence of the previous visits does not reduce the import of Gerber's statements to the deputies and the testimony regarding her injuries. Further, May's stipulation to previous domestic violence offenses already had the effect of informing the jury that there were previous interactions between May and the deputies. Thus, any potential erroneous admission of this evidence would not have affected the jury's findings. Consequently, we find no plain error in the trial court's admission of this evidence of other police visits to Gerber's and May's house.

*Gerber's Lack of Cooperation with Previous Prosecutions of May*

**{¶73}** Like the police visits, the evidence of Gerber's lack of cooperation with previous prosecutions of May does not amount to "other acts" evidence that is inadmissible under Evid.R. 404(B). The evidence adduced at trial included Gerber's statements in the recordings that she was uncooperative with prosecuting May after the first indictment was issued. The first indictment's charges were

---

[10] We also note that May's trial counsel referred to the fact that the authorities had been to the house multiple times. *See* Trial Tr., p. 187 ("I know that you have been out there various different times * * *.").

based on the October 24, 2008 and January 23, 2010 incidents, both of which were also covered in the second indictment. As such, the evidence relates to the counts charged in the second indictment and the circumstances surrounding this prosecution, which leaves this evidence outside the purview of Evid.R. 404(B). *See State v. Hobson*, 5th Dist. No. CA-732 (Aug. 2, 1991) (finding that Evid.R. 404(B) did not cover the witness's "narrative of the events that occurred," which described "the surrounding circumstances for the crime [charged]"). Further, the evidence does not reflect upon May's character, but only upon Gerber's character for credibility. Consequently, we find no plain error in the admission of the evidence regarding Gerber's lack of cooperation with previous prosecutions of May.

*Evidence of May's Criminal History*

{¶74} Two items of evidence presented at trial relate to May's criminal history: (1) his previous convictions for domestic violence; and (2) his previous charge for aggravated menacing. The admission of these items does not constitute reversible error.

{¶75} May was charged with four counts of domestic violence, each with a specification that he had previous domestic violence convictions. The State must prove an indictment specification beyond a reasonable doubt. *See State v. Louis*, 9th Dist. No. 20073 (Mar. 7, 2001) ("[T]he existence of a prior crime of domestic

violence [is] an element of the crime charged and it [is], therefore, incumbent upon the State to establish the prior crime by evidence beyond a reasonable doubt."). Based on this requirement, courts have allowed the State to present additional evidence of the defendant's domestic violence convictions, even when the parties have stipulated to such convictions. *State v. Arnold*, 8th Dist. No. 79280 (Jan. 24, 2002); *see also State v. Rivera*, 99 Ohio App.3d 325, 329-30 (11th Dist. 1994) (allowing State to present evidence of prior drug convictions even though the defendant stipulated to such convictions because the State had to prove previous convictions to obtain punishment enhancement).

{¶76} In this matter, the parties did stipulate to May's previous convictions.[11] The State also called Deputy Kopus and played the recordings of his conversations with May. In those conversations, May said that he had prior convictions and that his next conviction would produce a prison term. This evidence is plainly admissible because it is relevant to the specifications included in the indictment.

{¶77} The recordings also include May's statement that he was previously charged with aggravated menacing. Unlike evidence of his previous domestic violence convictions, this is not relevant to the crimes charged in the indictment. However, we find no prejudicial error in the evidence's admission. The State did

---

[11] Although the State contends that it did not present additional evidence of May's convictions, the record reflects that the State played the audio tape with May making his own admissions as to his prior convictions.

not present any evidence besides May's short admission regarding the aggravated menacing charge. And, the State did not cite to it in either the opening or closing statement. Thus, there is no indication that this evidence overpowered the jury and caused the outcome of the trial to change. Consequently, we find that the admission of evidence regarding May's criminal history does not amount to plain error.

*May's Alleged Breaking of Gerber's Teeth*

{¶78} Evidence that May allegedly broke Gerber's teeth presents a closer call. However, after considering the record in its entirety, we do not find any reversible error.

{¶79} In the recording of Deputy Kopus' conversation with Gerber on April 26, 2011, Gerber indicates that May had previously broken her teeth. However, there was no indication in the conversation whether the breaking of Gerber's teeth resulted from May's violence or from another type of conduct. Further, on direct examination by May's trial counsel, Gerber said that May did not purposefully break her teeth and that he repaired them whenever they broke. As a result of this, the jury was unable to draw any inferences from the evidence except that Gerber's teeth were previously broken.

{¶80} Even if the evidence was improper, its admission would be harmless. May's alleged breaking of Gerber's teeth did not change the outcome in the trial

court. Gerber's statements, the testimony from the responding deputies, and the evidence of Gerber's injuries support May's conviction. *See State v. Barker*, 6th Dist. No. L-01-1290, 2002-Ohio-2801, ¶ 26 (finding that the admission of prior bad acts was not plain error because other evidence was sufficient to support the defendant's conviction). In light of this, we cannot say that the jury relied upon the evidence of May's alleged breaking of Gerber's teeth in reaching its verdict. Consequently, we find no plain error in the admission of evidence regarding the alleged breaking of Gerber's teeth.

{¶81} Additionally, we note that May introduced evidence of his peaceful character. When May recalled Gerber as a defense witness, she testified that May was not aggressive or violent toward anyone. Even if the evidence of May's other acts had a prejudicial effect on the jury, Gerber's testimony would have reduced it.

{¶82} Accordingly, we overrule May's fourth assignment of error.

*Assignment of Error No. V*

{¶83} In his fifth assignment of error, May argues that his statements to the responding officers are inadmissible. Specifically, May suggests that the statements were made while he was under arrest and before he was advised of his constitutional rights. We disagree.

{¶84} In the trial court proceedings, May did not object to the admission of his statements on the grounds that they violated his *Miranda* rights. As such May

has waived this issue, except for plain error. *State v. Truax*, 7th Dist. No. 06 BE 66, 2007-Ohio-4993, ¶ 16, citing *State v. Foust*, 105 Ohio St.3d 107, 2004-Ohio-7006, ¶ 58 ("[T]he failure to properly provide *Miranda* warning are issues that must be resolved in the trial court during suppression proceedings, and these issues cannot be raised for the first time on appeal."). As discussed above, May's statements to the deputies referred to his previous domestic violence convictions, which are admissible, and his previous aggravated menacing arrest, which is not prejudicial to May. *See State v. Morris*, 7th Dist. No. 08 CO 7, 2009-Ohio-3326, ¶ 47 (finding that due to other evidence in the case, the defendant's statements to deputies in violation of *Miranda* were harmless). Consequently, we do not find plain error in the admission of May's statements.

**{¶85}** Accordingly, we overrule May's fifth assignment of error.

*Assignment of Error No. VI*

**{¶86}** In his sixth assignment of error, May maintains that the trial court erroneously allowed the State to employ preemptory challenges in a gender discriminatory fashion. We disagree.

**{¶87}** In *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 114 S.Ct. 1419 (1994), the United States Supreme Court found that "the Equal Protection Clause prohibits discrimination in jury selection on the basis of gender." *Id.* at 146; *see also Batson v. Kentucky*, 476 U.S. 79, 89, 106 S.Ct. 1712 (1986) (prohibiting use

of racial discrimination in preemptory challenges). A criminal defendant's failure to assert a *J.E.B.* issue, however, results in a waiver of that issue, except for the existence of plain error. *State v. Ballew*, 76 Ohio St.3d 244, 253 (1996). In *Ballew*, the defense's failure to object prevented the State from offering a non-discriminatory explanation for its preemptory challenge. As a result, the Court decided against addressing the issue's merits. *Id.* The same facts exist here and we follow *Ballew*'s guidance in finding a waiver of any *J.E.B.* issue.

{¶88} Accordingly, May's sixth assignment of error is overruled.

*Assignment of Error No. VII*

{¶89} In his seventh assignment of error, May contends that he was deprived of the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution. Specifically, May suggests that his trial counsel's failure to object to the evidence described in Assignment of Error Nos. I through V and the State's preemptory challenges establish ineffective assistance of counsel. We disagree.

{¶90} An ineffective assistance of counsel claim requires proof that trial counsel's performance fell below objective standards of reasonable representation and that the defendant was prejudiced as a result. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there

exists a reasonable probability that, but for counsel's errors, the outcome at trial would have been different. *Id.* at paragraph three of the syllabus. "Reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. *State v. Waddy*, 63 Ohio St.3d 424, 433 (1992), citing *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375 (1985), *superseded by constitutional amendment on other grounds as recognized by State v. Smith*, 80 Ohio St.3d 89, 103 (1997).

{¶91} Further, the court must look to the totality of the circumstances and not isolated instances of an allegedly deficient performance. *State v. Malone*, 2d Dist. No. 10564 (Dec. 13, 1989). "Ineffective assistance does not exist merely because counsel failed 'to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it.'" *Id.*, quoting *Smith v. Murray*, 77 U.S. 527, 535, 106 S.Ct. 2661 (1986).

{¶92} As explained above, evidence of May's pre-arrest silence, other acts, and statements to the deputies, as well as the evidence of Gerber's statements to emergency dispatchers and responding officers, were either properly admitted or their admission was harmless error. Further, the trial court's calling of Gerber as its own witness was not error. As such, we cannot find that the failure of May's trial counsel to object to these evidentiary items or to the calling of Gerber as the trial court's witness rises to the level of ineffective assistance of counsel. *See*

*State v. Dubose*, 7th Dist. No. 00-C.A.-60, 2002-Ohio-6613, ¶ 12-13 (finding no ineffective assistance of counsel where the trial counsel did not object to admissible evidence or to evidence that was harmlessly admitted).

**{¶93}** As to the failure of May's trial counsel to request a hearing regarding the State's alleged use of gender discrimination during voir dire, we look to the authority of *State v. Burks*, 10th Dist. No. 07AP-553, 2008-Ohio-2463. There, the court confronted an ineffective assistance of counsel claim for failure of the trial counsel to assert a *Batson* violation during the voir dire process. Without an objection, there was no record regarding the State's possible use of racial discrimination during voir dire. As a result, the court stated:

> We do not presume prejudice from a trial counsel's failure to raise a *Batson* challenge, and, as here, without an adequate record, we cannot properly consider on direct appeal a claim of ineffective assistance of counsel for a trial counsel's failure to raise a *Batson* objection. *Id*. at ¶ 57.

**{¶94}** We elect to follow *Burks* and apply it here to the State's alleged use of gender discrimination during voir dire. There was no objection in the trial court and there is only evidence that the State excused male jurors and alternates. As a result, there is an inadequate record and we are unable to assess the merits of May's argument. We also note that the makeup of the jury was almost equally balanced as to gender. Consequently, we decline to assess whether the failure of

-46-

May's trial counsel to probe into the reasons for the State's preemptory challenges supports an ineffective assistance of counsel claim.

{¶95} Accordingly, we overrule May's seventh assignment of error.

*Assignment of Error No. VIII*

{¶96} In his eighth assignment of error, May argues that cumulative errors in the trial court proceedings deprived him of due process. We disagree.

{¶97} The doctrine of cumulative error provides that "a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal." *State v. Baucom*, 3d Dist. No. 17-03-14, 2003-Ohio-6986, ¶ 6, quoting *State v. Leach*, 150 Ohio App.3d 567, 2002-Ohio-6654, ¶ 57 (1st Dist.). The appellant must show that there is a reasonable probability that but for the errors, the trial outcome would have been different. *State v. Ray*, 3d Dist. No. 14-05-39, 2006-Ohio-5640, ¶ 68. Here, because we have found no errors in May's previous assignments, May's argument that cumulative error has resulted in a denial of due process must also necessarily fail. *State v. Bradley*, 3d Dist. No. 15-10-03, 2010-Ohio-5422, ¶ 82.

{¶98} Accordingly, we overrule May's eighth assignment of error.

{¶99} Having found no error prejudicial to May, in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**